# EXHIBIT A

Jon B. Dumbeck, SBN 174949
Curtis M. King, SBN 187778
**DUMBECK & DUMBECK**
3355 Mission Ave., Suite 139
Oceanside, CA 92058
(760) 529-4958
(760) 637-2391 Fax

Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**03/09/2022** at 02:03:23 PM

Clerk of the Superior Court
By Elizabeth Reyes, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## SAN DIEGO COUNTY

| | |
|---|---|
| PATRICIA FIERRO,<br><br>    Plaintiff,<br><br>    v.<br><br>CAPITAL ONE, N.A.; and<br>DOES 1 through 10,<br><br>    Defendants. | ) Case No.:  37-2022-00009067-CU-BT-CTL<br>)<br>) **COMPLAINT**<br>)<br>) 1. Breach of the Implied Covenant<br>)   of Good Faith and Fair Dealing<br>) 2. Violation of Commercial Code<br>) 3. Violation of the Consumer<br>)   Credit Reporting Agencies Act<br>)   (Civil Code § 1785.25(a))<br>) 4. Declaratory Relief<br>) 5. Injunctive Relief<br>)<br>) [Jury Demanded] |

Plaintiff, PATRICIA FIERRO, alleges as follows:

1.    Plaintiff is informed and believes that defendant CAPITAL ONE, N.A. also known as CAPITAL ONE, National Association ("Capital One" or "defendants") is and was at all times mentioned herein a federally-charted national banking association.

2.    The true names and/or capacities of defendants DOES 1 through 10 ("defendants") are unknown to plaintiff, who therefore

1  sues said defendants by such fictitious names.  Plaintiff is

2  informed and believes and thereon alleges that each of the

3  defendants fictitiously named herein as a DOE is legally

4  responsible for the events and happenings hereinafter referred to,

5  and thereby proximately caused the injuries and damages to

6  plaintiff as hereinafter alleged.  Plaintiff will seek leave of

7  court to amend this Complaint to allege the true names and/or

8  capacities of said fictitiously named defendants when ascertained.

9      3.    Plaintiff is informed and believes and thereon alleges

10  that at all times herein mentioned, defendants, and each of them

11  were the agents, servants, employees and/or joint venturers of

12  each of their co-defendants, and each was, as such, acting within

13  the course, scope and authority of said agency, employment and/or

14  venture, with the advance knowledge, acquiescence or subsequent

15  ratification of each co-defendant.

16

17                        **INTRODUCTION**

18      4.    Under state and federal law, banks that choose to buy

19  retail installment sale contracts between an automobile dealer and

20  a consumer are liable for the dealer's unlawful conduct.[1]  The

21  policy for this, as recognized by the FTC, is to choke-off access

22  to financing for dishonest dealers and reduce incentives for

23  unethical sales practices.  ("[This rule] should have the effect of

24  causing creditors to be reluctant to finance transactions with

25  _____

[1] 6 C.F.R § 433.2, Com. Code §§ 2210(5), 9404(a), Civ. Code § 2983.5(a)

1  merchants who engage in disreputable or unethical sales

2  practices." 40 Fed. Reg. at p 53520)

3      5.   One such practice is the deceptive sale of high-

4  cost/low-value "add-ons" in the dealer's finance and insurance

5  (F&I) department where the high-price is intentionally "shrouded"

6  to exploit mistakes by consumers.[2]

7      6.   The sale of add-ons is an important profit center for

8  dealerships and often generate more profit than the sale of the

9  vehicle.[3]  The deceptive sales of add-ons is a long-standing

10  problem in the industry which has resulted in efforts to protect

11  consumers through specific legislation[4] and litigation by the

12  attorney general.[5]

13      7.   At issue in this case is the deceptive sale of an add-on

14  product of dubious value called "Guaranteed Asset Protection" (aka

15  "GAP insurance", "GAP coverage", or just "GAP").

16      8.   What is GAP? When a car is stolen or totaled in a crash,

17  a standard auto insurance policy will generally pay for the value

18  of the car at the time of loss. The insurance payout, however, may

19  be less than the balance owed to the creditor holding the retail

20  installment sales contract. GAP is supposed to take care the

21

22

23  [2] Gabaix, Xavier and David Laibson  (2005), "Shrouded Attributes, Consumer
    Myopia and Information Suppression in Competitive Markets," National Bureau of
    Economic Research, https://www.nber.org/papers/w11755.

24  [3] Auto Add-Ons Add Up, National Consumer Law Center, 2017, at p. 5,
    https://www.nclc.org/images/pdf/car_sales/report-auto-add-on.pdf

25  [4] Vehicle Code § 11713.19.
    [5] https://www.autodealertodaymagazine.com/358768/calif-ag-sues-blanco-for-bank-
    fraud-false-advertising

1   difference, so the consumer does not have to continue paying for a

2   car that has been totaled. Often, however, it does not:

> Dealers aggressively push GAP products because they
> are highly profitable. GAP products also reduce risk
> for the creditor while at the same time adding to the
> amount financed, thus increasing finance charges. On
> the other hand, consumers often find that GAP products
> fail to provide the promised benefits.  National
> Consumer Law Center (2017), *Auto Add-Ons Add Up: How
> Dealer Discretion Drives Excessive, Arbitrary, And
> Discriminatory Pricing*[6]

8      9.   Dealers could not easily sell high-price/low-value add-

9   ons like GAP, unless creditors were willing to finance these

10   sales. Unfortunately, the high demand for financed auto contracts,

11   often packaged and sold as investment securities, have caused

12   banks to relax underwriting standards and finance transactions

13   heavily packed with add-ons.  As noted by the Office of the

14   Comptroller of the Currency, for subprime borrowers (a synonym for

15   the working poor), in 2014 the sale of add-ons had increased the

16   average loan amount to nearly 150% of the vehicle's value.[7]

17      10.  This case arises out of the deceptive sale of a GAP

18   contract that covered only $48 of the "gap" after plaintiff's car

19   was totaled, leaving Capital One claiming an outstanding debt

20   against her of more than $2,000.

21      11.  Plaintiff seeks to establish that she does not owe the

22   debt claimed by Capital One, to clear the black mark placed by

23

24   ────────────────

[6]https://www.nclc.org/images/pdf/car_sales/report-auto-add-on.pdf

[7]Semiannual Risk Perspective, Comptroller of the Currency, National Risk

25   Committee, Spring, 2015, https://www.occ.gov/publications/publications-by-
type/other-publications- reports/semiannual-risk-perspective/semiannual-risk-
perspective-spring-2015.pdf

1  Capital One on her credit record, and to hold Capital One fully

2  accountable for its unlawful conduct. Plaintiff also seeks to

3  establish that the GAP product sold to her itself is unlawful and

4  to obtain injunctive relief to protect other consumers.

5

6  **STATEMENT OF FACTS**

7  **a. The fraudulent sale of GAP to plaintiff**

8  12.   In August 2014, plaintiff was a nursing assistant at a

9  convalescent hospital in Point Loma where she had been employed

10  for about 14-years.  She needed to replace her 15-year old

11  Plymouth Neon with something more reliable, but was on a tight

12  budget because she earned $13 per hour and had a monthly income of

13  $2,167.

14  13.   On or about August 26, 2014, El Cajon Ford offered to

15  sell, and plaintiff agreed to buy, an eight-year-old Nissan Altima

16  (the "vehicle"), that had 74,797 miles on it. The monthly payments

17  were $300 for five years, an amount plaintiff could barely afford.

18  14.   The dealer's employees said the monthly payment included

19  GAP insurance, which was required. Plaintiff signed the documents

20  presented to her including a "GAP ADDENDUM" (attached hereto and

21  incorporated by reference as Exhibit 1), and a retail installment

22  sale contract ("RISC" attached hereto and incorporated by

23  reference as Exhibit 2),  without explanation of what was covered

24  by the mandatory GAP insurance or the terms, conditions, and

25

1   exclusions that applied. The GAP ADDENDUM added $795 to the

2   contract.

3       15.   In fact, the GAP ADDENDUM was not an insurance policy

4   and did not provide insurance coverage to plaintiff. Instead, it

5   is an agreement by the dealer (and assignee) to waive the gap

6   amount, i.e., to waive the difference between the amount owing on

7   the contract and plaintiff's insurance payout, if the vehicle was

8   totaled or stolen.

9       16.   The GAP ADDENDUM form itself is deceptive and designed

10  to mislead consumers. For example, while it prominently appears to

11  provide insurance coverage, it disclaims such coverage in small

12  print. "Protecting Your Investment" is printed across the top

13  followed (further down the page in a large, bolded font) with what

14  appears to be coverage terms from an insurance policy:

15          Max. Limit of Liability: $50,000
            Max. Financing Contract Amount: $125,000
16          Max. % of Vehicle Value at Loan/Lease: 150%
            Max. Financing Contract term: 84 Mos.
17          Max. Deductible Buyback: $1,000

18      17.   The last statement, "Max. Deductible Buyback: $1,000" is

19  especially deceptive, suggesting a "buyback" of up to $1,000 of

20  the consumer's auto insurance deductible in the event the vehicle

21  is totaled.  Only a careful parsing of confusing language printed

22  on the back reveals, contrary to an ordinary consumer's

23  expectation, the $1,000 "Max. Deductible Buyback" is the amount of

24  deductible the customer <u>will not</u> get back and is not a potential

25  benefit provided by the agreement:

1      The amount WE will waive under this addendum shall
2 not exceed … the amount obtained by subtracting the
    primary insurance settlement, including any amount
    that the primary Deductible exceeds the Max.
3     Deductible Buyback reflected on Page 1, from the
    UNPAID NET BALANCE.
4

5     18.   Plaintiff, in reliance on the dealer's fraud, paid $795

6 for the GAP ADDENDUM. This amount represented 61 hours of work for

7 her in the nursing home and 8.5% of price of $9,467 vehicle.

8

9        **b. Capital One buys the RISC and is assigned the**
           **dealer's rights and liabilities**

10     19.   The RISC charged plaintiff 21.99% interest, and granted

11 the dealer a security interest in the vehicle until plaintiff paid

12 it off five years later in 2019. After the sale, Capital One

13 immediately purchased the RISC and GAP ADDENDUM from the dealer,

14 and was assigned the dealer's rights and liabilities.

15

16      **c. Capital One waives only $48.82 under the GAP**
       **ADDENDUM and demands more than $2,000 from**
17        **plaintiff after the vehicle is totaled**

18     20.   On or about December 15, 2017, plaintiff was involved in

19 a collision. Her insurance company, State Farm, determined the

20 vehicle was a total loss.

21     21.   Capital One's records showed a payoff balance of

22 $6,232.33 on the date of loss. State Farm determined the insured

23 value of the vehicle, and after deducting $500 for plaintiff's

24 deductible, paid insurance proceeds of $3,758.34 to Capital One.

25

7<br>Complaint

1    22.   Plaintiff performed the conditions required of her to

2  obtain the GAP ADDENDUM's benefit, and reasonably expected the

3  remaining balance would be waived. Instead, Capital One waived only

4  $48.82 under the GAP ADDENDUM, and claimed plaintiff still owed

5  more than $2,000 on the RISC. Capital One attempted to collect this

6  amount and began reporting to credit bureaus that plaintiff

7  defaulted on the RISC and owes the bank more than $2,000.

8

9        **d. Capital One refuses to explain how it
           calculated the purported $2,000 deficiency it
10          claims against plaintiff**

11    23.   California Commercial Code Section 9616 allows a

12  consumer to request that a secured creditor explain in writing how

13  a purported deficiency has been calculated. The creditor has 14

14  days to either explain how it calculated the deficiency, or waive

15  the deficiency.

16    24.   On or about August 18, 2021, plaintiff sent Capital One

17  a statutory request for an explanation of the purported deficiency

18  calculation.

19    25.   Capital One did not provide its response until on or

20  about September 17, 2021, and the "explanation" never actually

21  explained how the bank had calculated the purported deficiency.

22    26.   Capital One's "explanation" also made several patently

23  false statements of fact that are contradicted by its own records.

24    27.   Capital One's "explanation" claimed that at the time of

25  loss, plaintiff had three past due payments, and had incurred

1  fourteen late charges. This was not true. Capital One's December

2  4, 2017 Monthly Statement shows that at the date of loss (December

3  15, 2017), there was only one past due payment and two late

4  charges due. What's more, Capital One's own records show in the

5  weeks after the accident, plaintiff overpaid Capital One an

6  additional $702 to bring the account current as of the date of

7  loss.

8      28.   Capital One's "explanation" also indicated the GAP

9  ADDENDUM was between plaintiff and a third party and Capital One

10  was not responsible for any miscalculation of the benefit: "As an

11  initial matter, Ms. Fierro purchased GAP directly through her auto

12  dealer, El Cajon Ford, from a third party GAP administration

13  company called Classic." This statement is not true. Plaintiff did

14  not buy anything from a third party. What she bought with her

15  $795, was a waiver from Capital One of the following clause in the

16  RISC:

17      In the event of theft or damage to your vehicle that
        results in a total loss, there may be a gap between the
18      amount you owe under this contract and the proceeds of
        your insurance settlement and deductible. THIS CONTRACT
19      PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional
        gap contract debt cancellation contract for coverage of
20      the gap amount may be offered for an additional charge.

21      29.   The GAP ADDENDUM was not an agreement between plaintiff

22  and a third party. The GAP ADDENDUM amended the RISC: "This GAP

23  protection contract addendum, which is effective as of the

24  inception date above, amends the FINANCING CONTRACT."  The RISC,

25

---

1    in turn, incorporated the GAP ADDENDUM: "If you choose to buy a

2    gap contract … It is a part of this contract."

3        30.   By taking an assignment from the dealer, Capital One

4    agreed to become a party to the GAP ADDENDUM and be subject to its

5    waiver: "This addendum is between the CUSTOMER shown above (YOU or

6    YOUR) and the DEALER shown above (WE, US, or OUR) or if the

7    FINANCING CONTRACT is assigned to another party, the ASSIGNEE."

8        31.   What's more, pursuant to the written assignment of the

9    RISC, the dealer and Capital One agreed that Capital One would be

10   "subject to all claims and defenses which the debtor could assert

11   against the seller of goods or services obtained pursuant here to

12   or with the proceeds here of."  Capital One's agreement to be

13   liable for the dealer's wrongful conduct is consistent with its

14   statutory obligations under California law following the

15   assignment. Com. Code §§ 2210(5), 9404(a), and Civ. Code §

16   2983.5(a).

17                      **FIRST CAUSE OF ACTION**
                    **BREACH OF THE IMPLIED COVENANT**
18                 **OF GOOD FAITH AND FAIR DEALING**
                      **(Against all Defendants)**
19

20       32.   Plaintiff incorporates by reference the allegations

21   stated in each preceding paragraph.

22       33.   Capital One's unfair, unreasonable, and dishonest

23   interpretation of the RISC and GAP ADDENDUM, handling of

24   plaintiff's claim, and performance under the contract violated the

25   implied covenant of good faith and fair dealing.

34. Capital One's conduct in this regard interfered with plaintiff's rights, prevented her from obtaining benefits under the contract, and caused her to incur costs and expend resources.

### SECOND CAUSE OF ACTION
### VIOLATION OF COMMERCIAL CODE
#### (Against all Defendants)

35. Plaintiff incorporates by reference the allegations stated in each preceding paragraph.

36. A secured creditor may obtain a deficiency judgment from a consumer, but only by complying with all relevant provisions of Division 9 (commencing with Section 9101) of California Uniform Commercial Code.[8]

37. Within 14 days of receiving an authenticated request for an explanation from a debtor, a secured creditor must either (1) explain how it calculated a deficiency, or (2) waive the deficiency. Com. Code § 9616(b).

38. Plaintiff sent Capital One an authenticated request for an explanation of the deficiency in compliance with Commercial Code Section 9616.

39. Capital One did not comply with Section 9616's 14-day deadline to either explain or waive its deficiency. It also did not reveal how it calculated the deficiency.

___

[8] "[T]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." *Bank of America v. Lallana* (1998) 19 Cal.4th 203, 215. See also Com. Code § 9626(b), et seq.

40.   Capital One is not entitled to a deficiency because it failed to comply with the provisions of Division 9 of the Commercial Code. See Com. Code §§ 9616 and 9626(b)(1)(a) and (b)(2)(C).

41.   Because it failed to either (1) timely explain how the deficiency was calculated, or (2) waive the deficiency, as required by Commercial Code Section 9616, in addition to not being entitled to a deficiency, Capital One is liable for a $500 statutory penalty.   Com. Code § 9625(e)(5) and (6).

### THIRD CAUSE OF ACTION
### VIOLATION OF THE CONSUMER CREDIT REPORTING AGENCIES ACT
### (Against all Defendants)

42.   Plaintiff incorporates by reference the allegations stated in each preceding paragraph.

43.   Pursuant to California's Consumer Credit Reporting Agencies Act, no one is allowed to furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate. Civ. Code § 1785.25(a).

44.   Defendants have willfully furnished inaccurate and misleading information to consumer reporting agencies about plaintiff, the contract, and the purported deficiency, that they knew or should have known was not accurate.

45.   Defendants' willful violations of Civil Code Section 1785.25(a) were and are a substantial factor in causing harm to

1  plaintiff, for which she is entitled to recover actual damages and

2  statutory penalties from each defendant.

3      46.  Plaintiff is informed and believes that defendants'

4  furnishing of inaccurate credit information as to plaintiff

5  regarding a deficiency balance she does not owe, is part of a

6  willful pattern or practice.

7

8                    **FOURTH CAUSE OF ACTION**
                     **DECLARATORY RELIEF**

9                    **(Against all Defendants)**

10     47.  Plaintiff incorporates by reference the allegations

11  stated in each preceding paragraph.

12     48.  An actual controversy has arisen and now exists between

13  plaintiff and defendants, and each of them.

14     49.  On the one hand, Capital One contends:

15     a. The GAP ADDENDUM required the bank to waive only $48.82

16        following receipt of the insurance proceeds for the

17        totaled vehicle;

18     b. Plaintiff owes Capital One a deficiency following the

19        sale of the collateral;

20     c. Each month since the accident the bank has been

21        furnishing an accurate statement of the deficiency

22        amount to the credit bureaus.

23     50.  On the other hand, plaintiff contends:

24     d. Capital One did not satisfy the statutory requirements

25        entitling it to a deficiency under the Commercial Code;

                              13
                           Complaint

e. Plaintiff did not and does not owe Capital One a deficiency in the amount it claims;

f. Capital One did not correctly calculate the amount of the waiver pursuant to the GAP ADDENDUM's terms;

g. As a result of the dealer's fraud (for which Capital One agreed to be subject), plaintiff did not receive the benefits of the GAP ADDENDUM that she bargained for;

h. The GAP ADDENDUM contains deceptive, unconscionable and unenforceable terms;

i. Capital One has inaccurately reported to the credit bureaus, libeled and defamed plaintiff, and wrongfully attempted to collect a debt from her she does not owe.

51.   Plaintiff desires a judicial declaration of the parties' rights and duties with respect to the attached contract, including, but not limited to, defendant's right to collect a deficiency, the validity and amount of any claimed debt, and the accurate information, if any, that defendants may furnish to the credit bureaus.

52.   A judicial declaration of the rights and obligations of the parties is appropriate and will help resolve future controversies between the parties before they escalate to a repudiation of obligations, an invasion of rights, or the commission of wrongs.

**FIFTH CAUSE OF ACTION**
**INJUNCTIVE RELIEF**
**(Against all defendants)**

1

2

3      53.   Plaintiff incorporates by reference the allegations

4      stated in each preceding paragraph.

5      54.   Plaintiff is informed and believes that the unlawful

6      conduct as alleged herein if not enjoined by the Court will

7      continue and cause harm to plaintiff in the future.

8      55.   The Consumers Legal Remedies Act ("CLRA"; Civil Code §

9      1750 et seq.) authorizes a consumer damaged by an unlawful method,

10     act or practice to bring an action for various forms of relief,

11     including an order enjoining the methods, acts, or practices, and

12     for restitution.   Civil Code § 1780(a)(2) and (3). Defendants

13     conduct as alleged herein caused plaintiff damage and harm in

14     violation of Civil Code Section 1770(a)(14), (16) and (19).

15     56.   Pursuant to California's unfair competition law ("UCL"

16     Bus. & Prof. Code § 17200 et seq) the Court has authority to

17     enjoin unlawful, fraudulent and/or unfair business acts and

18     practices. As alleged herein, defendants engaged in unlawful,

19     fraudulent and/or unfair business acts and practices, which are

20     prohibited by the UCL, and caused damage and harm to plaintiff.

21     57.   Pursuant to the CLRA and UCL, the Court has authority to

22     and should issue the following injunctions:

23            a.   That Capital One is to cease all collection efforts

24                 regarding plaintiff's purported obligation for a

25                 deficiency;

1     b.  That Capital One is to correct all inaccurate

2         information which it has furnished to any credit

3         bureaus regarding plaintiff's purported obligation for

4         deficiency;

5     c.  That Capital One, in the future, is to refrain from

6         furnishing inaccurate information to any credit bureaus

7         regarding plaintiff's purported obligation for a

8         deficiency;

9     d.  That Capital One is to provide restitution to

10        plaintiff;

11    e.  That Capital One, in the future, is to not accept

12        assignments of a retail installment sale contract that

13        has been modified by the unfair, fraudulent, and/or

14        deceptive GAP ADDENDUM form (Exhibit 1).

15    f.  As to those retail installment sale contracts currently

16        held by Capital One that have been modified by the

17        unfair, fraudulent, and/or deceptive GAP ADDENDUM form

18        (Exhibit 1), should the buyer perform the conditions

19        stated in the boxed paragraph on page 2 beginning "LOSS

20        DOCUMENT REQUIREMENTS", that Capital One is to include

21        in its waiver the amount of the buyer's insurance

22        deductible.

23

24

25

1       WHEREFORE, Plaintiff prays for judgment against defendants,

2   and each of them, as follows:

3       1.   Declaratory relief;

4       2.   Actual, economic and non-economic damages;

5       3.   Restitution;

6       4.   Statutory penalties;

7       5.   Injunctive relief;

8       6.   Attorney fees and costs per contract and/or statute;

9       7.   Prejudgment interest;

10      8.   For such other and further relief as the Court deems

11   just and proper.

12                                  **DUMBECK & DUMBECK**

13   Dated: 3-9-2022

14                                  By:  Curtis M. King
                                    Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

1       VERIFICATION OF VENUE

2          I declare under penalty of perjury under the laws of the

3    State of California that the county where this action is filed is

4    where:

5       ☐ I signed the contract at issue;

6       ☐ I resided at the time the contract at issue was entered into;

7       ☐ I currently reside;

8       ☐ Where the motor vehicle at issue is permanently garaged;

9       ☐ Defendant resides;

10      ☐ Defendant has his or her principal place of business;

11      ☑ Defendant is doing business;

12      ☑ The transaction or a substantial portion thereof occurred.

13

14   Dated: 3/9/22                    _____
                                       Plaintiff
15

16

17

18

19

20

21

22

23

24

25

_____

                        Complaint

# Exhibit 1

*Signature GAP 150% AIC (6/12)*

# CLASSIC

# *Signature*
### Protecting Your Investment

# GAP ADDENDUM

## CUSTOMER (BORROWER) INFORMATION

LAST NAME **FIERRO**   FIRST NAME **PATRICIA**   MIDDLE INITIAL _____

STREET ADDRESS **7920 ANZA DR # A**   APT # _____

CITY **SAN DIEGO**   STATE **CA**   ZIP CODE **92114**

HOME PHONE # **(619) 565-4317**   PHONE # _____   EMAIL **(619) 224-4141**

## COVERED VEHICLE INFORMATION

MANUFACTURER **NISSAN**   MODEL **ALTIMA**   APR % **21.99**   YEAR **2006**

VEHICLE ID NUMBER **1N4AL11D26C233183**

ONE TIME CHARGE TO CUSTOMER FOR DEFICIENCY WAIVER ADDENDUM $ **795.00**   ORIGINAL DATE OF CONTRACT **08/26/2014**

INSTALLMENT SALES ☐ BALLOON   AMOUNT _____   *MSRP/NADA $ **9240.00**   Mileage: **74797**

CONTRACT/LOAN/LEASE ☒☐ LOAN   FINANCED $ **10840.01**   **TERM (IN MONTHS) **60**   NEW ☐   USED ☒

DEALER (CREDITOR) INFORMATION   *Maximum Eligibility Limit **150%** MSRP/NADA   **Maximum Term of GAP **84** Months   Maximum GAP Benefit **$50,000**

DEALER # _____   DEALERSHIP **EL CAJON FORD**

STREET ADDRESS **1595 E MAIN ST**

CITY **EL CAJON**   STATE **CA**   ZIP CODE **92021**

## ASSIGNEE INFORMATION

ASSIGNEE **CAPITAL ONE AUTO FINANCE**   INSTALLMENT SALES CONTRACT / LOAN / ACCT. # _____

STREET ADDRESS **PO BOX 660068**

CITY **SACRAMENTO**   STATE **CA**   ZIP CODE **95866**

| | |
|---|---|
| **Max. Limit of Liability: $50,000** | **Max. Financing Contract Term: 84 Mos.** |
| **Max. Financing Contract Amount: $125,000** | **Max. Deductible Buyback: $1,000** |
| **Max. % of Vehicle Value At Loan/Lease: 150%** | |

This GAP protection contract addendum, which is effective as of the inception date above, amends the FINANCING CONTRACT. This addendum is between the CUSTOMER shown above (YOU or YOUR) and the DEALER shown above (WE, US, or OUR) or if the FINANCING CONTRACT is assigned to another party, the ASSIGNEE.

In the event of a CONSTRUCTIVE TOTAL LOSS or UNRECOVERED THEFT to the PROTECTED VEHICLE, we agree to waive our rights against you for an amount subject to the LIMITS OF LIABILITY on the reverse side and the terms, conditions and exclusions hereof. You will remain responsible for payment of any items stated under Exclusions and that remain unpaid in the FINANCING CONTRACT.

GAP does not take the place of insurance on the PROTECTED VEHICLE. You are responsible for maintaining collision and comprehensive insurance for the full value of the vehicle and any other insurance required by the FINANCING CONTRACT or applicable law. You are responsible for all notifications or claims that are required to be filed with your automotive insurance company. We will not process or handle your insurance claims for you. If you move during the term of this contract, it is your responsibility to notify US or our Administrator of your change of address.

You may wish to consult an alternative source to determine whether similar protection may be obtained and at what cost. If you purchase GAP from this source, you understand that the Dealer may retain all or a portion of the charge for this GAP addendum. You should carefully read the back of this addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent you from receiving benefits under this addendum.

**LIMITATIONS–THIS IS ONLY A PARTIAL LIST. YOU MUST READ THIS ENTIRE GAP ADDENDUM FOR ALL LIMITATIONS:**
A.   We will not waive that portion of the UNPAID NET BALANCE that results from the original FINANCING CONTRACT amount exceeding the Max. % of Vehicle Value at Loan/Lease stated above at the inception date of this addendum.
B.   The amount waived for FINANCING CONTRACTS with terms greater than the Maximum Financing Contract Term stated above will be based on a net payoff calculated using the Maximum Financing Contract Term stated above.
C.   Any addendum issued for a term or an amount financed in excess of A or B above will be deemed eligible for enrollment as limited by this section.
D.   FINANCING CONTRACTS that do not have uniform monthly repayment terms for the full period of the FINANCING CONTRACT are subject to the provisions of Condition B on the reverse side of this form.

**TERMINATION OF ADDENDUM:** This addendum will terminate on the date that any of the following events occur: 1. the date your FINANCING CONTRACT is scheduled to terminate; 2. in the event that the FINANCING CONTRACT is terminated prior to its maturity date; 3. in the event that a PROTECTED VEHICLE is sold, assigned or transferred by You before the expiration date of the FINANCING CONTRACT; 4. expiration of any redemption period following the repossession or surrender of the PROTECTED VEHICLE; or 5. the date the FINANCING CONTRACT is prepaid or the FINANCING CONTRACT is refinanced.

**YOUR RIGHT TO CANCEL:** You may cancel this addendum before midnight of the 30th day after the inception date shown above and receive a full refund/credit. In the event of early termination of the addendum after the 30th day, provided no loss under this addendum has occurred, any refund will be calculated on the basis of a Pro Rata refund method, less a $50.00 cancellation fee (the cancellation fee is waived on all Ford Motor Credit (FMC) installment loans), unless other state regulatory methods apply. We will apply all refund proceeds to any remaining balance. It is your responsibility to notify the Dealer, in writing, of your request to cancel this addendum and request a refund/credit of the GAP charges. If you do not receive the refund/credit within 60 days of notice of cancellation/termination, contact the GAP Administrator shown below.

**BY YOUR SIGNATURE BELOW YOU ACKNOWLEDGE AND AGREE TO THE FOLLOWING:**
- THAT THIS GAP ADDENDUM IS NOT AN INSURANCE POLICY OR PART OF AN INSURANCE POLICY.
- THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS VEHICLE.
- THAT YOU HAVE READ AND UNDERSTAND THIS ADDENDUM AND ITS PROVISIONS AND AGREE THAT NO VERBAL REPRESENTATIONS HAVE BEEN MADE TO YOU THAT DIFFER FROM THESE WRITTEN PROVISIONS.
- YOU AUTHORIZE RELEASE OF FINANCING CONTRACT INFORMATION REQUIRED FOR PROCESSING OF A LOSS.
- LOSSES MUST BE REPORTED TO THE BELOW ADMINISTRATOR WITHIN NINETY (90) DAYS OF THE PRIMARY CARRIER'S SETTLEMENT OR, IF THERE IS NO PRIMARY CARRIER, WITHIN NINETY (90) DAYS OF THE DATE OF LOSS.

**Yes, I elect the GAP Protection and acknowledge understanding of all provisions above and on succeeding pages.**

Customer Signature: _____   Date: **08/26/14**

Customer Signature: _____   Date: _____

Dealer Signature: _____   Date: **08/26/14**

WHITE - CUSTOMER   YELLOW - CLASSIC   PINK - DEALER   GOLDENROD - ASSIGNEE
Administered by Norman and Company, Inc.  106 State Street East, Oldsmar, FL 34677   800-930-4633

Signature GAP 150% AIC (6/12)

P. 1

Signature GAP 150% AIC (6/12)

## LIMITS OF LIABILITY

The amount WE will waive under this addendum shall not exceed the lesser of:

**A.** The amount shown as the MAXIMUM LIMIT OF LIABILITY on Page 1; or

**B.** If the collateral is protected by a PRIMARY CARRIER; the amount obtained by subtracting the primary insurance settlement, including any amount that the primary deductible exceeds the Max. Deductible Buyback reflected on Page 1, from the UNPAID NET BALANCE. If a portion of the PROTECTED VEHICLE is not covered by a PRIMARY CARRIER, the ACTUAL CASH VALUE AT LOSS of that portion and the amount of any unrepaired prior damage or the value of any retained salvage shall be added to the primary insurance settlement. The total will then be subtracted from the UNPAID NET BALANCE; or

**C.** If the PROTECTED VEHICLE is not protected by a PRIMARY CARRIER; the amount obtained by subtracting the ACTUAL CASH VALUE AT LOSS of the PROTECTED VEHICLE, reduced by the amount of any prior damage or retained salvage, from the UNPAID NET BALANCE.

## DEFINITIONS

**A.** FINANCING CONTRACT/LOAN/LEASE: The contract which represents the financing agreement between YOU and US for the purchase or lease of the PROTECTED VEHICLE, and which sets forth the terms, conditions, inception date and expiration date of the financing agreement.

**B.** PROTECTED VEHICLE: The vehicle shown on Page 1. The vehicle shown on Page 1 must be a private passenger automobile, SUV or light truck of no more than 12,500 lbs. GVWR. A new PROTECTED VEHICLE is a PROTECTED VEHICLE that is (1) of the current or immediately previous model year; (2) has less than 6,001 odometer miles at the time of purchase/lease; and (3) has not been previously titled. A used PROTECTED VEHICLE is a PROTECTED VEHICLE that is (1) older than the immediately previous model year, and/or (2) has more than 6,000 odometer miles at the time of purchase/lease; and/or (3) has been previously titled.

**C.** COMMERCIAL PURPOSES: Vehicles used for carrying goods or passengers for livery or delivery purposes for compensation. COMMERCIAL PURPOSES shall also include vehicles used for any of the following purposes at the time of the accident or UNRECOVERED THEFT: security services, police vehicles and emergency vehicles. Share-the-expense car pools are not considered a COMMERCIAL PURPOSE under this addendum.

**D.** VEHICLE VALUE AT LOAN/LEASE: The lesser of (1) the manufacturer's suggested retail price, (2) the selling price of the vehicle or (3) the vehicle's retail value from the current, at date of loan or lease, National Automobile Dealer's Association (NADA) guide.

**E.** PRIMARY CARRIER: The insurance company that: 1) is secured by YOU to provide physical damage coverage, as required in the FINANCING CONTRACT on a PROTECTED VEHICLE, or 2) provides liability coverage to any person who has caused YOUR vehicle to incur a CONSTRUCTIVE TOTAL LOSS and for which that person is legally liable. Additionally, the PRIMARY CARRIER shall be any other coverage YOU may have protecting YOUR interest in the PROTECTED VEHICLE, contingent upon the failure or absence of YOUR coverage.

**F.** CONSTRUCTIVE TOTAL LOSS: A loss where the cost to repair or replace the PROTECTED VEHICLE plus its salvage value would exceed the ACTUAL CASH VALUE AT LOSS.

**G.** UNRECOVERED THEFT: A PROTECTED VEHICLE reported as stolen to both the police and the PRIMARY CARRIER who have made every effort, yet have failed to find and return the PROTECTED VEHICLE. A PROTECTED VEHICLE that is confiscated or improperly taken or secreted by YOU, where both YOUR and the PROTECTED VEHICLE'S whereabouts are not known shall not be deemed for the purposes of this addendum as an UNRECOVERED THEFT loss.

**H.** ACTUAL CASH VALUE AT LOSS: The retail value of the PROTECTED VEHICLE or any portion thereof with appropriate adjustments for mileage, optional equipment or unrepaired prior damage. The retail value will be determined from the current, at DATE OF LOSS, National Automobile Dealers Association guide.

**I.** UNPAID NET BALANCE: The amount owed to US by YOU, in accordance with the terms and conditions of the FINANCING CONTRACT, resulting from early termination of the FINANCING CONTRACT. This amount may not include any unearned interest; loan or lease charges; late charges; any DELINQUENT PAYMENTS; any uncollected service charges; refundable prepaid taxes or fees; or any other proceeds YOU may duly recover by canceling insurance coverages, service contracts, warranties; unearned GAP charges; disposition fees, termination fees, penalty fees, or other items added to the initial FINANCING CONTRACT balance after the inception of the FINANCING CONTRACT. If two or more pieces of collateral are secured under a FINANCING CONTRACT, WE will not waive more than the proportionate share of the total UNPAID NET BALANCE that the balance applicable to the PROTECTED VEHICLE represents to the total FINANCING CONTRACT balance. The UNPAID NET BALANCE also excludes loans or special finance offers which may waive or delay payment of principal or interest.

**J.** DELINQUENT PAYMENT(S): Any payment, as described in the FINANCING CONTRACT, which remains unpaid for a period of more than ten (10) days after the date stated in the FINANCING CONTRACT. DELINQUENT PAYMENTS will also include any late charges or interest that have accrued due to past due FINANCING CONTRACT payments.

**K.** DATE OF LOSS: The date on which the actual physical damage or UNRECOVERED THEFT occurs. If such date is indeterminable, the DATE OF LOSS shall be the date the PRIMARY CARRIER makes settlement and payment to You.

## EXCLUSIONS

This addendum does not cover loss or damage:

**A.** Occurring prior to the effective date of this addendum.

**B.** In connection with a FINANCING CONTRACT effected prior to the effective date of this addendum.

**C.** Resulting directly or indirectly from any dishonest, fraudulent, criminal, or illegal act or arising from an intentional act committed by YOU.

**D.** Due to or resulting from mechanical or electrical breakdown or failure.

**E.** Resulting from the vehicle being operated, used, or maintained in any race, speed contest or other contest.

**F.** If the vehicle was ever titled as salvage or rebuilt vehicle.

**G.** For vehicles used for COMMERCIAL PURPOSES.

**H.** For any amounts deducted from the PRIMARY CARRIER's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.

**I.** Attributable to other than the standard or optional equipment available from the manufacturer of the PROTECTED VEHICLE, including but not limited to: special carpeting, furniture, bars, audio, video or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap. Factory approved conversion packages and dealer installed options usually included in used car value guidebooks are not excluded.

**J.** If YOU (1) intentionally concealed or misrepresented any material fact; (2) engaged in fraudulent conduct; or (3) made a false statement in submitting a potential loss.

**K.** Due to the UNRECOVERED THEFT of the vehicle unless a police report has been filed.

**L.** If the loss is not reported within ninety (90) days of settlement with the PRIMARY CARRIER, or, should there be no PRIMARY CARRIER, within ninety (90) days of the DATE OF LOSS.

**M.** Occurring after the expiration of any redemption period following the repossession or surrender of the PROTECTED VEHICLE.

## CONDITIONS

**A.** ADDENDUM PERIOD, TERRITORY: This addendum shall be effective for the term reflected on Page 1, and will only cover losses that occur during the original FINANCING CONTRACT term of a PROTECTED VEHICLE in the United States, its territories and possessions and Canada.

**B.** FINANCING CONTRACTS WITH NON-UNIFORM PAYMENT TERMS: If the first monthly payment is due more than forty-five (45) days after the date of the FINANCING CONTRACT, for the purpose of loss settlement the FINANCING CONTRACT shall be amortized as if the first monthly payment were due in forty-five (45) days, using equal monthly payments, applying the lowest interest rate applicable at any time during the term of the FINANCING CONTRACT.

   (1) Unless designated on page 1 as a lease or balloon loan, if the FINANCING CONTRACT is a lease or a loan with a balloon payment at the end of the FINANCING CONTRACT term, for the purpose of loss settlement the FINANCING CONTRACT shall be amortized using the method below that results in the lowest balance at the time of the CONSTRUCTIVE TOTAL LOSS or UNRECOVERED THEFT:

      a) The amortization schedule specified in the FINANCING CONTRACT, or

      b) Full amortization of the FINANCING CONTRACT to zero balance using equal monthly payments and the FINANCING CONTRACT interest rate over the FINANCING CONTRACT's original term.

   (2) If designated as a lease or balloon loan on page 1, for the purpose of loss settlement, the lease or balloon note loan shall be amortized to the lesser of (a) the residual value or balloon amount stated in the FINANCING CONTRACT, or (b) the residual value of the PROTECTED VEHICLE as shown in the most current edition of the Automotive Lease Guide (ALG) in use on the FINANCING CONTRACT effective date.

   (3) All other FINANCING CONTRACTs with non-uniform payment terms shall be amortized on a simple interest basis over the stated FINANCING CONTRACT term using the lowest interest rate applicable at any time during the FINANCING CONTRACT term and equal monthly payments.

   (4) If the FINANCING CONTRACT is a lease, the residual value of the PROTECTED VEHICLE on the last day of the lease term shall be the residual value stated in the leasing contract or the Automobile Lease Guide (ALG) Used Vehicle Guide residual value of the PROTECTED VEHICLE shown in the most current version of the guide on the effective date of the lease, whichever is less.

**C.** MITIGATION OF LOSS: YOU should do all things reasonable and practical to avoid or reduce any loss under this addendum and to protect the PROTECTED VEHICLE from any further loss. YOU should also take reasonable measures to ensure that the maximum amount of actual cash value of a PROTECTED VEHICLE is paid by the PRIMARY CARRIER. Any loss due to YOUR failure to protect the vehicle or maximize settlement from PRIMARY CARRIER shall not be recoverable under this addendum.

**D.** DECLARATIONS: By accepting this addendum, You acknowledge the agreements and representations in the addendum and agree that this addendum is issued based upon the truth of such representations.

**E.** ASSIGNMENT: This GAP addendum will follow the FINANCING CONTRACT with no subrogation rights against the Purchaser/Customer/Lessee, if the FINANCING CONTRACT is sold or assigned by the DEALER. This addendum shall not be assigned, ceded or transferred by YOU.

**LOSS DOCUMENT REQUIREMENTS:** YOU shall report any potential loss to the ADMINISTRATOR (at the address shown on the front) within ninety (90) days of settlement with the PRIMARY CARRIER or should there be no PRIMARY CARRIER within ninety (90) days of the DATE OF LOSS. For each loss YOU must provide the following and any other additional information we may request: 1) a copy of the primary insurance settlement worksheet and claim check; 2) verification of any other insurance or other recoverables (including sale of salvage); 3) verification of any other recoverables; 4) a copy of this GAP addendum; 5) verification of the primary insurance deductible and the date of loss; 6) a copy of the police report, in the case of an UNRECOVERED THEFT; 7) details of the FINANCING CONTRACT include YOUR name and address, account number, amount borrowed, interest rate, payment amount, FINANCING CONTRACT history and calculation of UNPAID NET BALANCE amount and; 8) any additional reasonable documentation requested by our GAP administrator. No amount shall be waived by US if the claim is not reported or if the documentation is not provided within the stated time period. All amounts waived as the result of this addendum shall be applied to the FINANCING CONTRACT balance within thirty (30) days after satisfactory presentation and acceptance of all information listed above to our administrator. Loss processing will not be made until YOU have recovered all amounts from any insurance or other indemnity which is valid and collectible and from any other recoverable or refundable source.

## STATE PROVISIONS

The cancellation fee and processing fee is not applicable in Kansas, Indiana, Louisiana, Missouri, New Mexico, Vermont and Wisconsin. **Alaska:** The GAP Addendum will not waive the deductible on the primary carriers policy. The Customer will be responsible to pay the deductible portion to the creditor. **Indiana:** The EXCLUSIONS Section is amended to include; Financing contracts where the amount financed is less than 80% of MSRP are not eligible for participation in this GAP program. **Kansas:** The ASSIGNMENT Section is amended by deleting exclusion C. CONDITION Section E. ASSIGNMENT is deleted and replaced by the following: Assignment; This addendum will remain part of the FINANCING CONTRACT with no subrogation rights against YOU if the FINANCING CONTRACT or lease is assigned, sold or transferred by the DEALER. If You have complaints regarding this Addendum You may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603, (785) 296-2266 or toll free 1-877-387-8523. GAP coverage may not cancel or waive the entire amount owing at the time of loss. **Louisiana:** Payable Loss: The difference between the net payoff on the date of loss and the primary carrier settlement. The payable loss will not exceed $50,000. Payable loss includes the amount of your physical damage deductible on the primary carrier's policy up to $1,000. In the event that there is no primary carrier coverage in effect on the date of loss, or if the primary carrier is declared insolvent, we will only pay the difference between the net payoff as of the date of loss and the Actual Cash Value (ACV) for any amount deducted from the primary carrier's settlement due to prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments. Exclusion H is amended to read: H...." due to prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments. **Nebraska:** This addendum is not regulated by the Department of Insurance. **Tennessee:** The cost of this addendum is not regulated and you have the responsibility to determine whether the cost of this addendum is reasonable in relation to the protection afforded by this addendum. **Utah:** This addendum is subject to limited regulation by the Utah Insurance Commissioner and a complaint regarding this addendum may be submitted to the Commissioner at the Utah Department of Insurance, State Office Building, Room 3110, Salt Lake City, UT 84114. **Vermont:** We must assign, sell or transfer, within 15 business days, the Retail Installment sale contract/loan/lease to a Financial Institution as defined in the subdivision 1110(32) of Title 8 to an entity licensed under subdivision 2209(a)(1) or (3) of Title 8 or this addendum is void and You will receive a full refund of the charges of this addendum. The extension of credit, terms of the credit nor the terms of the related sale in the case of a motor vehicle are to be conditioned upon the purchase of a debt protection agreement. **Washington:** 1. Any refund of the purchase price for an addendum that was included in the financing of the PROTECTED VEHICLE may be applied by the creditor as a reduction of the overall amount owed under the FINANCING CONTRACT, rather than applying the refund strictly to the purchase price of the addendum. 2. The guaranteed asset protection addendum is not credit insurance, nor does it eliminate the borrower's obligation to insure the protected vehicle as provided by laws of this state. Purchasing a GAP addendum does not eliminate the borrower's rights and obligations under the separate single-interest and collateral protection coverage laws of this state. **Wisconsin:** Termination of addendum is amended as follows "It is your responsibility to notify the DEALER in writing, of your request to cancel this addendum and to request a refund/credit of the GAP charges" is deleted. A cancellation refund within the first 30 days will also include the amount of the applicable finance charge. The CONDITION provision is amended by deleting item B(1).

Signature GAP 150% AIC (6/12)

# Exhibit 2

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

| Dealer Number | Contract Number 415102 | R.O.S. Number 56921828 | Stock Number 8574 |
|---|---|---|---|

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| PATRICIA FIERRO 7920 ANZA DR # A SAN DIEGO           CA  92114 SAN DIEGO | | EL CAJON FORD 1595 E MAIN ST EL CAJON            CA  92021 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2006 | NISSAN ALTIMA | 74797 | 1N4AL11D26C233183 | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1700.00 is |
|---|---|---|---|---|
| 21.99 % | $ 7270.99 (e) | $ 10840.01 | $ 18511.00 (e) | $ 19811.00 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | 400.00 | 09/23/2014 |
| One Payment of | N/A | |
| One Payment of | N/A | |
| 59 | 301.85 | Monthly beginning 10/09/2014 |
| N/A | N/A | N/A |
| One final payment | 301.85 | 09/09/2019 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

## ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   A. Cash Price of Motor Vehicle and Accessories .................................. $ 9467.00(A)
      1. Cash Price Vehicle .............................. $ 9467.00
      2. Cash Price Accessories ....................... $ N/A
      3. Other (Nontaxable)
         Describe   N/A .................................. $ N/A
         Describe   N/A .................................. $ N/A
   B. Document Processing Charge (not a governmental fee) ...................... $ 80.00(B)
   C. Emissions Testing Charge (not a governmental fee) ......................... $ 50.00(C)
   D. (Optional) Theft Deterrent Device (to whom paid) ........................... $ N/A(D)
   E. (Optional) Theft Deterrent Device (to whom paid) ........................... $ N/A(E)
   F. (Optional) Theft Deterrent Device (to whom paid) ........................... $ N/A(F)
   G. (Optional) Surface Protection Product (to whom paid) ..................... $ N/A(G)
   H. (Optional) Surface Protection Product (to whom paid) ..................... $ N/A(H)
   I. EV Charging Station (to whom paid) ........................................... $ N/A(I)
   J. Sales Tax (on taxable items in A through I) .................................. $ 767.76(J)
   K. Electronic Vehicle Registration or Transfer Charge
      (not a governmental fee) ............... CVR /DMV ........................ $ 29.00(K)
   L. (Optional) Service Contract (to whom paid) ........ FORD EXTRACER ... $ 1295.00(L)
   M. (Optional) Service Contract (to whom paid) ............................... $ N/A(M)
   N. (Optional) Service Contract (to whom paid) ............................... $ N/A(N)
   O. (Optional) Service Contract (to whom paid) ............................... $ N/A(O)
   P. (Optional) Service Contract (to whom paid) ............................... $ N/A(P)

## STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy insurance will not be a factor in the credit approval process.

### Vehicle Insurance

| | | Term | Premium |
|---|---|---|---|
| $ N/A Ded. Comp, Fire & Theft | | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | | N/A Mos. | $ N/A |
| Bodily Injury | $ N/A Limits | N/A Mos. | $ N/A |
| Property Damage | $ N/A Limits | N/A Mos. | $ N/A |
| Medical | $ N/A | N/A Mos. | $ N/A |
| | N/A | | |
| Total Vehicle Insurance Premiums | | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____
Co-Buyer X _____
Seller X _____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Application for Optional Credit Insurance

☐ Credit Life:    ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | N/A Mos. | N/A | $ N/A |
| Credit Disability | N/A Mos. | N/A | $ N/A |
| Total Credit Insurance Premiums | | | $ N/A (b) |

Insurance Company Name    N/A

Home Office Address    N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE

P. 1

| | | |
|---|---|---|
| L. (Optional) Service Contract (to whom paid) | $ _____ N/A (M) | |
| M. (Optional) Service Contract (to whom paid) | $ _____ N/A (M) | |
| N. (Optional) Service Contract (to whom paid) | $ _____ N/A (N) | |
| O. (Optional) Service Contract (to whom paid) | $ _____ N/A (O) | |
| P. (Optional) Service Contract (to whom paid) | $ _____ N/A (P) | |
| Q. Prior Credit or Lease Balance paid by Seller to | | |
| (e) | $ _____ N/A (Q) | |
| (see downpayment and trade-in calculation) | | |
| R. (Optional) Gap Contract (to whom paid) _____ CLASSIC CAP | $ __705.00 (R) | |
| S. (Optional) Used Vehicle Contract Cancellation Option Agreement | $ _____ N/A (S) | |
| T. Other (to whom paid) _____ N/A | | |
| For | $ _____ N/A (T) | |
| **Total Cash Price (A through T)** | $ __12384.75 (1) | |

**2. Amounts Paid to Public Officials**

| | |
|---|---|
| A. Vehicle License Fees | $ ____30.00 (A) |
| B. Registration/Transfer/Titling Fees | $ ___117.00 (B) |
| C. California Tire Fees | $ _____0.00 (C) |
| D. Other _____ N/A | $ _____0.00 (D) |
| **Total Official Fees (A through D)** | $ ___147.00 (2) |

**3. Amount Paid to Insurance Companies**

| | |
|---|---|
| (Total premiums from Statement of Insurance column a + b) | $ _____ N/A (3) |
| **4. ☒ State Emissions Certification Fee or ☐ State Emissions Exemption Fee** | $ _____8.25 (4) |
| **5. Subtotal (1 through 4)** | $ __12540.01 (5) |

**6. Total Downpayment**

| | |
|---|---|
| A. Agreed Trade-In Value Yr ____1998____ Make __PLYMOUTH__ | $ ___800.00 (A) |
| Model __NEON__ Odom __261865__ | |
| VIN __1P3ES47C2WD765095__ | |
| B. Less Prior Credit or Lease Balance (e) | $ _____ N/A (B) |
| C. Net Trade-In (A less B) (indicate if a negative number) | $ ___500.00 (C) |
| D. Deferred Downpayment | $ ___400.00 (D) |
| E. Manufacturer's Rebate | $ _____ N/A (E) |
| F. Other _____ N/A | $ _____ N/A (F) |
| G. Cash | $ ___900.00 (G) |
| **Total Downpayment (C through G)** | $ __1700.00 (6) |
| (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1Q above) | |
| **7. Amount Financed (5 less 6)** | $ __10840.01 (7) |

---

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: _____ N/A

Amount $ __N/A__ Finance Charge $ __N/A__

Total $ __N/A__ Payable In __N/A__

installments of $ __N/A__ $ __N/A__

from this Loan is shown in item 6D.

---

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: _____

---

disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3). Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).
You want to buy the credit insurance.

| Date | X _____ Buyer Signature | Age |
|---|---|---|
| Date | X _____ Co-Buyer Signature | Age |

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 1R of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term __60__ Mos. __CLASSIC CAP__
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1L,1M, 1N, 1O, and/or 1P.

| | | | |
|---|---|---|---|
| 1L Company | FORD EXTRACARE | | |
| Term | 24 Mos. or | 24000 | Miles |
| 1M Company | N/A | | |
| Term | N/A Mos. or | N/A | Miles |
| 1N Company | N/A | | |
| Term | N/A Mos. or | N/A | Miles |
| 1O Company | N/A | | |
| Term | N/A Mos. or | N/A | Miles |
| 1P Company | N/A | | |
| Term | N/A Mos. or | N/A | Miles |

Buyer X _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _____

Co-Buyer Signs X _____

---

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X _____ Buyer

X _____ Co-Buyer

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____    Co-Buyer Signs X _____

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ , Year _____ . SELLER'S INITIALS _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR WHETHER YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN, THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.

Seller agrees to pay the amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund.

Buyer Signature X _____    Co-Buyer Signature X _____

P. 2

(If negative, enter zero on line 6 and enter the amount less than zero as a positive amount on line 7 above) .......... Miles ___

**7.  Amount Financed (5 less 6)** ...................................................... $ **10840.01** (7)    Buyer X _____

| SELLER ASSISTED LOAN | AUTO BROKER FEE DISCLOSURE | HOW THIS CONTRACT CAN BE CHANGED. This |
|---|---|---|

**SELLER ASSISTED LOAN** - BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED TO MAKE THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: _____ N/A _____
Amount $ __N/A__ of Finance Charge $ ___N/A___
Total $ __N/A__ Payable in ___N/A___
installments of $ _____N/A__ $ ___N/A___
from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐  Name of autobroker receiving fee, if applicable: _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X _____
Co-Buyer Signs X _____

---

**SELLER'S RIGHT TO CANCEL.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X _____                    X _____
Buyer                                  Co-Buyer

---

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____                Co-Buyer Signs X _____

---

**OPTION:** ☒ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ , ____ Year ____ . SELLER'S INITIALS ____

---

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
**WARNING:**
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER; HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____                    X _____

---

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund.

Buyer Signature X _____                Co-Buyer Signature X _____

---

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____                Co-Buyer Signature X _____

---

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____ Date **03/25/14**  Co-Buyer Signature X _____ Date ____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____N/A_____                Address _____N/A_____

---

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guaranty; and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.
Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____  Date ____    Guarantor X _____  Date ____
Address _____                    Address _____

---

Seller Signs ___EL CAJON FORD___ Date **03/25/14**  By X _____ Title ___F/M S4___

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller-Creditor may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   > **GAP LIABILITY NOTICE**
   > In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional gap contract (debt cancellation contract) for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   • The vehicle and all parts or goods installed on it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service, or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance

   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.
   g. **What we may do about optional insurance, maintenance service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   **If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **Servicing and Collection Contacts.**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **Applicable Law.**
   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

8. **Warranties of Buyer.** You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

---

**CREDIT DISABILITY INSURANCE NOTICE**
**CLAIM PROCEDURE**
If you become disabled, you must tell us right away. (You are advised

may be offered for an additional charge.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods installed on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3.  IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a.  You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b.  You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property;
- The vehicle is lost, damaged or destroyed; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.  You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. If you agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

**d.  We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e.  How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem).

**6.  Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7.  Applicable Law**
Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**8.  Warranties of Buyer.** You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

**CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE**
If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given. If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

**Seller's Right to Cancel**
a.  Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b.  Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c.  If you do not immediately return the vehicle, you shall be liable for all

P. 5

tracking device, you agree that we may use the device to
find the vehicle. If we take the vehicle, any accessories,
equipment and replacement parts will stay with the vehicle.
If any personal items are in the vehicle, we may store them
for you at your expense. If you do not ask for these items,
we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we
repossess the vehicle, you may pay to get it back (redeem).
You may redeem the vehicle by paying all you owe, or you
may have the right to reinstate this contract and redeem
the vehicle by paying past due payments and any late
charges, providing proof of insurance, and/or taking other
action to cure the default. We will provide you all notices
required by law to tell you when and how much to pay
and/or what action you must take to redeem the vehicle.

**b.** Seller shall give you written notice (or in any other manner in which
actual notice is given to you) within 10 days of the date this contract
is signed if Seller elects to cancel. Upon receipt of such notice, you
must immediately return the vehicle to Seller in the same condition
as when sold, reasonable wear and tear excepted. Seller must give
back to you all consideration received by Seller, including any trade-
in vehicle.

**c.** If you do not immediately return the vehicle, you shall be liable for all
expenses incurred by Seller in taking the vehicle from you, including
reasonable attorney's fees.

**d.** While the vehicle is in your possession, all terms of the contract,
including those relating to use of the vehicle and insurance for the
vehicle, shall be in full force and you shall assume all risk of loss or
damage to the vehicle. You must pay all reasonable costs for repair
of any damage to the vehicle until the vehicle is returned to Seller.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| | | (Assignee) (at address) |
|---|---|---|
| | | under the terms of Seller's agreement(s) with Assignee. |

Seller assigns its interest in this contract to _____

☐ Assigned with recourse    ☐ Assigned without recourse    ☐ Assigned with limited recourse

Seller _____  By X _____  Title _____

**Form No. 553-CA-ARB 7/13**

# EXHIBIT B

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Curtis M. King, SBN 187778<br>Dumbeck & Dumbeck<br>3355 Mission Ave., Suite 139, Oceanside, CA 92058<br><br>TELEPHONE NO.: (760) 529-4958   FAX NO. *(Optional):*<br>ATTORNEY FOR *(Name):* PLAINTIFF PATRICIA FIERRO | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**03/09/2022** at 02:03:23 PM<br>Clerk of the Superior Court<br>By Elizabeth Reyes,Deputy Clerk |
|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 WEST BROADWAY
MAILING ADDRESS: 330 WEST BROADWAY
CITY AND ZIP CODE: SAN DIEGO 92101
BRANCH NAME: HALL OF JUSTICE

CASE NAME:
FIERRO V. CAPITAL ONE, N.A.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>37-2022-00009067-CU-BT-CTL |
|---|---|---|---|---|
| ☒ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE: Judge John S. Meyer<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   ☐ Auto (22)
   ☐ Uninsured motorist (46)
   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   ☐ Asbestos (04)
   ☐ Product liability (24)
   ☐ Medical malpractice (45)
   ☐ Other PI/PD/WD (23)
   **Non-PI/PD/WD (Other) Tort**
   ☒ Business tort/unfair business practice (07)
   ☐ Civil rights (08)
   ☐ Defamation (13)
   ☐ Fraud (16)
   ☐ Intellectual property (19)
   ☐ Professional negligence (25)
   ☐ Other non-PI/PD/WD tort (35)
   **Employment**
   ☐ Wrongful termination (36)
   ☐ Other employment (15)

   **Contract**
   ☐ Breach of contract/warranty (06)
   ☐ Rule 3.740 collections (09)
   ☐ Other collections (09)
   ☐ Insurance coverage (18)
   ☐ Other contract (37)
   **Real Property**
   ☐ Eminent domain/Inverse condemnation (14)
   ☐ Wrongful eviction (33)
   ☐ Other real property (26)
   **Unlawful Detainer**
   ☐ Commercial (31)
   ☐ Residential (32)
   ☐ Drugs (38)
   **Judicial Review**
   ☐ Asset forfeiture (05)
   ☐ Petition re: arbitration award (11)
   ☐ Writ of mandate (02)
   ☐ Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   ☐ Antitrust/Trade regulation (03)
   ☐ Construction defect (10)
   ☐ Mass tort (40)
   ☐ Securities litigation (28)
   ☐ Environmental/Toxic tort (30)
   ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
   **Enforcement of Judgment**
   ☐ Enforcement of judgment (20)
   **Miscellaneous Civil Complaint**
   ☐ RICO (27)
   ☐ Other complaint *(not specified above)* (42)
   **Miscellaneous Civil Petition**
   ☐ Partnership and corporate governance (21)
   ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 3/7/2022

Curtis M. King
_____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

# EXHIBIT C

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>CAPITAL ONE, N.A.; and DOES 1 through 10 | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**03/09/2022** at 02:03:23 PM<br>Clerk of the Superior Court<br>By Elizabeth Reyes,Deputy Clerk |

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PATRICIA FIERRO

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  San Diego Superior Court, State of California<br>330 West Broadway, San Diego, CA 92101 | CASE NUMBER: *(Número del Caso):*<br>37-2022-00009067-CU-BT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Curtis M. King, DUMBECK & DUMBECK, 3355 Mission Ave., Suite 139, Oceanside, CA 92058; (760) 529-4958

| DATE: 03/10/2022 | Clerk, by | E.Reyes | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | E. Reyes | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*  CAPITAL ONE, N.A.

   under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

For your protection and privacy, please press the Clear

# EXHIBIT D

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7064 |

| PLAINTIFF(S) / PETITIONER(S): | Patricia Fierro |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Capital One NA |
|---|---|

FIERRO VS CAPITAL ONE NA [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 37-2022-00009067-CU-BT-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  John S. Meyer                                          Department: C-64

## COMPLAINT/PETITION FILED: 03/09/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/12/2022 | 10:00 am | C-64 | John S. Meyer |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

# EXHIBIT E



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2022-00009067-CU-BT-CTL          CASE TITLE: Fierro vs Capital One NA [IMAGED]

<u>**NOTICE:**</u> **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
> **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
> **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_**
> **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

<u>**Potential Advantages and Disadvantages of ADR**</u>
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

<u>**Most Common Types of ADR**</u>
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:**  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|

STREET ADDRESS:     330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827
BRANCH NAME:        Central

PLAINTIFF(S):   Patricia Fierro

DEFENDANT(S):  Capital One NA

SHORT TITLE:    FIERRO VS CAPITAL ONE NA [IMAGED]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2022-00009067-CU-BT-CTL |
|---|---|

Judge: John S. Meyer                                          Department: C-64

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)            ☐  Non-binding private arbitration

☐  Mediation (private)                    ☐  Binding private arbitration

☐  Voluntary settlement conference (private)   ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)           ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____            Date: _____

_____          _____
Name of Plaintiff                         Name of Defendant

_____          _____
Signature                                 Signature

_____          _____
Name of Plaintiff's Attorney              Name of Defendant's Attorney

_____          _____
Signature                                 Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  03/10/2022                        _____
                                          JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev.12-10)     **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**          Page: 1

# EXHIBIT F

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Curtis King, 187778
Dumbeck & Dumbeck
3355 Mission Ave., Suite 139
Oceanside, CA 92058
**TELEPHONE NO.:** (760) 5294958
ATTORNEY FOR *(Name):* Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/11/2022** at 10:48:00 AM

Clerk of the Superior Court
By E- Filing,Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
Superior Court of California, San Diego County
330 W. Broadway
San Diego, CA 92101-3409

PLAINTIFF/PETITIONER: Patricia Fierro

DEFENDANT/RESPONDENT: Capital One, N.A., et al.

CASE NUMBER:
37-2022-00009067-CU-BT-CTL

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.:
Fierro

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:

Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; Notice of E-Filing Requirements and Imaged Documents; Stipulation to Use Alternative Dispute Resolution; Alternative Dispute Resolution Information

3. a. Party served: CAPITAL ONE, N.A.

   b. Person Served: CSC - Jenn Bautista - Person Authorized to Accept Service of Process

4. Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N
   Sacramento, CA 95833
5. I served the party
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 03/10/2022          (2) at (time): 1:55PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

   CAPITAL ONE, N.A.
   under: CCP 416.10 (corporation)
7. **Person who served papers**
   a. Name:          Tyler Anthony DiMaria
   b. Address:      One Legal - P-000618-Sonoma
                        1400 North McDowell Blvd, Ste 300
                        Petaluma, CA 94954

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 40.00
   e I am:
        (3) registered California process server.
            (i) Employee or independent contractor.
            (ii) Registration No.: 2006-06
            (iii) County: Sacramento

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 03/10/2022

Tyler Anthony DiMaria
_____
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

| Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br><br>OL# 17827470 |