**MCGUIREWOODS LLP**
Alicia A. Baiardo (SBN 254228)
Christine M. Mastromonaco (SBN 318894)
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
Telephone: 415.844.9944
Facsimile: 415.844.9922

Attorneys Defendant
for Capital One, N.A.

'22CV493  BAS BLM

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA FIERRO,<br><br>          Plaintiff,<br><br>     vs.<br><br>CAPITAL ONE, N.A.,<br><br>          Defendant. | CASE NO.<br><br>[Removed from The Superior Court of California, County of San Diego Case No. 37-2022-00009067-CU-BT-CTL]<br><br>**DEFENDANT CAPITAL ONE, N.A.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND PLAINTIFF PATRICIA FIERRO:**

Pursuant to Federal Rule of Evidence 201(b) and (d), Defendant Capital One, N.A., ("Capital One") hereby requests the Court take judicial notice of the following documents attached hereto in support of its Notice of Removal of Civil Action from State Court filed concurrently herewith:

**Exhibit 1**: Plaintiff's Notice of Motion and Motion for an Award of Reasonable Attorney's Fees; Memorandum of Points and Authorities; Declaration of Jon B. Dumbeck and Curtis M. King in *Guzman v. Point Loma Pre-Owned, Inc.*, Case No.: 37-2016-00003913-CU-NP-NC.

**Exhibit 2:** Minute Order of Honorable Gregory W. Pollack in *Guzman v. Point Loma Pre-Owned, Inc.*, Case No.: 37-2016-00003913-CU-NP-NC.

The documents above are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Court filings are widely held as proper subjects of judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").  Thus, Capital One respectfully requests that the Court take judicial notice of these documents, and the facts they evidence.

DATED: April 11, 2022          **McGuireWoods LLP**


By: */s/ Alicia A. Baiardo*
    Alicia A. Baiardo
    Attorneys for Defendant
    Capital One, N.A.

# EXHIBIT 1

1 | Jon B. Dumbeck, SBN 174949
Curtis M. King, SBN 187778
2 | **DUMBECK & DUMBECK**
3355 Mission Ave., Suite 139
3 | Oceanside, CA 92058
(760) 529-4958
4 | (760) 637-2391 Fax

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**07/14/2017** at 04:36:00 PM

Clerk of the Superior Court
By Veronica Navarro, Deputy Clerk

5 | Attorneys for Plaintiff

6

7

8 |                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 |                   **SAN DIEGO COUNTY, NORTH COUNTY BRANCH**

10

11 | GUADALUPE GUZMAN,

12 |      Plaintiff,

13 | v.

14 | POINT LOMA PRE-OWNED, INC.,

15 |      Defendant.

16

17

18

19

) Case No.: 37-2016-00003913-CU-NP-NC
)
) **PLAINTIFF'S NOTICE OF MOTION AND**
) **MOTION FOR AN AWARD OF REASONABLE**
) **ATTORNEY'S FEES; MEMORANDUM OF**
) **POINTS AND AUTHORITIES;**
) **DECLARATION OF JON B. DUMBECK AND**
) **CURTIS M. KING**
)
) Date:   September 29, 2017
) Time:   10:00 a.m.
) Dept:   C-71
) Judge: Hon. Gregory W. Pollack
)
)
) Complaint filed: 2/4/16
) Trial date: 4/24/17
)

20

21 |     TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

22 |     PLEASE TAKE NOTICE that at the above time, date, and

23 | department, the Court, located at 330 West Broadway, San Diego,

24 | California, 92101, will hear plaintiff's motion for an award of

25 | reasonable attorney's fees in the amount of $277,560.

---

1      This motion is based on the grounds that plaintiff is the

2  prevailing party in this action and is entitled to a mandatory

3  award of reasonable attorneys fees pursuant to Civil Code §2983.4

4  and Civil Code §1717.

5      This motion is based upon this notice, the accompanying

6  memorandum of points and authorities, the declarations of counsel

7  and evidence filed herewith, and on such other and further

8  evidence as may be presented at the hearing on this motion.

9                                    DUMBECK & DUMBECK

10  Dated: _7.14.(7_

11                                    By:  Jon B. Dumbeck
                                     Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## I. INTRODUCTION

Plaintiff Guadalupe Guzman prevailed in this action involving an automobile sales contract. As the prevailing party, she is entitled to a mandatory award of attorney fees under two important consumer protection statutes.

When deciding the amount of fees to award under these statutes, the courts use the lodestar adjustment method.  As demonstrated by the declarations of counsel, time records, and lodestar calculation presented herein, Guzman's request for attorney's fees in the amount of $277,560 is reasonable and should be allowed in full.

## II. SUMMARY OF FACTS

This case involved the sale of a used Ford F250.  The truck was purchased wholesale at a dealer's auction under a red light, warning bidders that there were no warranties as to its condition.  The defendant then offered the truck for retail sale without first performing the pre-sale smog test and safety inspection required by law.  The defendant falsely advertised that the truck was in "excellent condition" with "highway miles" and made similar representations directly to the plaintiff to make the sale.

The dealership sold the truck to the plaintiff for $10,995. Defendant prepared a written contract that misstated the cash down payment and failed to document the plaintiff's trade-in.

1    After the sale, the plaintiff quickly discovered that the
2    truck was not in "excellent condition" but had serious mechanical
3    problems and would require expensive repairs before it could be
4    operated safely.  These problems included excessive play in the
5    steering, warped brake rotors, a malfunctioning EGR valve, fuel
6    leaks, oil leaks, and coolant leaks.

7    The plaintiff provided the defendant with a repair estimate
8    from a mechanic itemizing the problems, and asked the defendant
9    to cancel the contract, take back the truck, and return the
10   trade-in and cash down payment.  The dealership refused to cancel
11   the sale.  Later, the defendant repossessed the truck from the
12   plaintiff's home.

13   After the repossession, the defendant repaired the truck's
14   brakes and EGR value, but did not repair the other problems
15   (including the leaking head gasket).  The defendant again
16   advertised that the truck was in "excellent condition" with
17   "highway miles" and sold the truck to another customer, Lora
18   Haliw.

19   The defendant did not credit the proceeds of the post-
20   repossession sale to the plaintiff.  Instead, it kept everything:
21   the down payment, the plaintiff's trade-in, and the proceeds from
22   the Haliw sale.

23   Predictably, after Lora Haliw bought the truck, it blew a
24   head gasket.  The Haliw family was left with a non-functioning
25

---

1 | truck needing a $6,000 repair, while making monthly payments to

2 | protect their credit.

3 | **III. PROCEDURAL HISTORY**

4 | The plaintiff and her husband are immigrants from Mexico.

5 | They live in an apartment in Escondido with their three children.

6 | Although they do not speak English fluently, have limited

7 | education and financial resources, they are honest and

8 | hardworking.  Their teenage son, Jason, helped them translate

9 | when dealing with the defendant.

10 | To the plaintiff and her family, it seemed like the

11 | defendant's employees were thieves who had brazenly stolen a

12 | thousand dollars in cash and the family car.  So, they decided to

13 | call the police to report the crime.

14 | The police told the plaintiff her dispute with the defendant

15 | was a civil matter handled by the courts.  The plaintiff went to

16 | the court complex in Vista and asked for help.  Eventually, a

17 | clerk referred her to North County Lifeline, a non-profit

18 | organization that provides community services and counseling to

19 | low income families.  North County Lifeline in turn referred the

20 | plaintiff to her attorney, Jon Dumbeck, who speaks Spanish

21 | fluently, has a history of representing people in dealer fraud

22 | cases, and accepts cases on a contingent fee basis.

23 | With the assistance of counsel, the plaintiff was able to

24 | convince Westlake, the finance company to whom the defendant had

25 | sold the contract, to require the defendant to buy it back rather

1   then declaring the plaintiff in default and ruining her credit.

2   The defendant, however, stubbornly maintained that the contract

3   was enforceable, the plaintiff was in breach, and it had no

4   obligation to return anything to the plaintiff.

5        In January 2016, the plaintiff filed her complaint seeking

6   rescission and restitution based on fraud, and illegality.  She

7   also brought a claim for conversion and sought punitive damages.

8        During more than a year of litigation, the defendant

9   maintained its no liability position and refused to make a good

10  faith settlement offer.  As trial approached, the plaintiff

11  offered to waive jury to avoid the expense and scheduling

12  uncertainty of a jury trial.  The defendant refused.  This caused

13  the case to be transferred from Vista to San Diego for the jury

14  trial.

15       Trial commenced on April 24, 2017.  On May 2, 2017, the jury

16  returned a verdict for the plaintiff for conversion, fraud by

17  misrepresentation, fraud by concealment, and rescission and

18  awarded damages of $11,300.  The jury's verdict also found the

19  defendant guilty of malice, oppression or fraud warranting

20  punitive damages.

21       On May 3, 2017, after a second phase of the trial, the jury

22  returned its verdict awarding $250,000 in punitive damages.  On

23  May 15, 2017, judgment was entered for the plaintiff in the

24  amount of $261,300.

25       Despite repeated suggestions from the Court, the defendant

1   refused to engage in settlement discussions during trial.   During

2   the second phase of trial, the defendant ignored the Court's

3   warning and failed to provide credible financial records.   This,

4   and the plainly false testimony of the defendant's owner during

5   the second phase, made it clear to the jury that substantial

6   punitive damages were required.

7   **IV. LEGAL DISCUSSION**

8   **1.   Plaintiff is entitled to an award of attorney fees
         pursuant to two consumer protection statutes.**

9

10  Plaintiff is entitled to an award of reasonable attorney's

11  fees pursuant to the following statutes:

12  •   Civil Code § 2983.4 that requires a fee
        award to the prevailing party in any
13      action on a conditional sales contract
        for a motor vehicle;

14

15  •   Civil Code § 1717(a) that requires a
        fee award to the prevailing party in
        any action on a contract that contains
16      a one-sided fee clause.

17  a.   <u>Plaintiff is entitled to a fee award under
        Civil Code 2983.4.</u>

18

19  The Automobile Sales Finance Act ("ASFA"), also known as the

20  Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, §

21  2981 et seq.) governs conditional sales contracts for motor

    vehicles.
22

23  Civil Code section 2983.4 states:

    Reasonable attorney's fees and costs shall be awarded
24  to the prevailing party in any action on a contract or
    purchase order subject to the provisions of this
    chapter regardless of whether the action is instituted
25  by the seller, holder or buyer.

1    The purpose for enacting the ASFA was to protect automobile

2    customers from the economic hazards caused by various abuses the

3    Legislature had determined were prevalent in the industry.

4    *Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 69.

5    One of these abuses was the industry practice of including one-

6    sided attorney's fee clauses in sales contracts making it

7    difficult or impossible for customers to find attorneys willing

8    to represent them.   *Damain v. Tamondong*, (1998) 65 Cal.App.4th

9    1115, 1120.

10    Civil Code section 2983.4 was the legislative response to

11    the problem:

> The Legislature's primary purpose in enacting section
> 2983.4 was to enable consumers with good claims or
> defenses to find attorneys willing to represent them in
> court, and also prevent the abusive practice of
> inserting into form contracts under the ASFA an
> unenforceable, one-sided attorney fee provision.
> *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.4th
> 140, 150 citing *Damain v. Tamondong* (1998) 65
> Cal.App.4th 1115, 1120.

17    Accordingly, the courts interpreted Civil Code section

18    2983.4 broadly and apply it to "any and all actions where the

19    subject matter involves a contract subject to the provisions of

20    the act."   *Leaf v. Phil Rauch, Inc.*, (1975) 47 Cal.App.3d 371,

21    378-379.   A car buyer who prevails on a claim of rescission is

22    entitled to recover attorney's fees.   *Id.*

23    Furthermore, the plaintiff's right to rescission in this

24    case was authorized by the defendant's violation of ASFA's

25    mandatory requirements for an enforceable contract.   The jury

1  found that the contract failed to state the agreed value of

2  the trade-in and the actual amount of the down payment in the

3  written contract.  This established a violation of Civil Code

4  §2981.9 and entitled the plaintiff to rescind the contract

5  under Civil Code §2983.  Under these circumstances, plaintiff

6  is entitled to a mandatory award of attorney's fees under

7  §2983.4.

           b.   <u>Plaintiff is entitled to a fee award</u>

8                   <u>under Civil Code § 1717(a).</u>

9      The pre-printed form contract prepared by the defendant in

10  this case contains a one-sided attorney fee provision allowing

11  the seller to recover attorney fees against the buyer:

12

13      You agree that upon your default we shall be entitled
    to recover from you our reasonable collection costs,
    including, but not limited to, an attorney's fee.

14      (Contract, ¶7 Default; Complaint Exhibit A;  Trial
    Exhibit 24)

15      This fee provision favoring only the seller triggered the

16  plaintiff's statutory right to recover fees as the prevailing

17  party "whether or not they are the party specified in the

18  contract" and allows recovery on "any action on a contract".

19  Civ. Code §1717(a).

20      It is well-established that rescission is an "action on a

21  contract" for purposes of a fee award under section 1717(a).

22  *Hastings v. Matlock*, (1985) 171 Cal.App.3d 826, 840-841.  When a

23  "party litigant prevails in an action on a contract by

24  establishing that the contract is invalid, inapplicable,

25

1   unenforceable, or nonexistent" they are the prevailing party

2   under section 1717.  *Santisas v. Goodin* (1998) 17 Cal.4th 599,

3   610-611.  Accordingly, the plaintiff is entitled to a fee award

4   under section 1717(a).

5

6       **2.   A fee award under ASFA must fully compensate**
        **lawyers for all of the hours reasonably spent on**
7       **a case and must not be limited to a proportion of**
        **the plaintiff's recovery.**

8

9       *Graciano v. Robinson Ford* is instructive on this point.  In

10  *Graciano* a women sued a car dealership under ASFA.  The jury

11  returned a verdict for $11,191.40 in the first phase, and found

12  malice, oppression, and fraud.  The case settled for a total of

13  $45,000 before the punitive damages phase of trial.  The

14  settlement included the defendant's agreement that the plaintiff

15  would make a motion for attorney fees.

16      The plaintiff filed a motion seeking $249,365.36 in attorney

17  fees.  The trial court awarded $27,570 in fees, reasoning: "It is

18  not uncommon for contingent fee agreements to require Plaintiff

19  to pay 40% (more or less) of the recovery through trial to

20  his/her counsel."  *Graciano v. Robinson Ford Sales, Inc.*, (2006)

21  144 Cal.App.4th 140, 164.  The 4th DCA in San Diego reversed

22  stating:

23          Finally, because this matter involves an individual
            plaintiff suing under consumer protection statutes
            involving mandatory fee-shifting provisions, the
24          legislative polices are in favor of Graciano's
            recovery of all attorney fees reasonably expended,
25          without limiting the fees to a proportion of her
            actual recovery.  *Id.*

The *Graciano* court analogized consumer protection cases to civil rights cases where a proportionality requirement is contrary to public policy. *Id.* The principal that a fee award should provide compensation for all time reasonably spent prosecuting a consumer protection or civil rights case, without being capped by the amount recovered, reiterated in *Graciano*, can be seen in numerous California cases including:

- Fee award of $87,525 affirmed on appeal when plaintiff recovered $1 in damages in a consumer protection case for unfair debt collection. *Heritage Pacific Financial LLC v. Monroy*, (2013) 215 Cal.App.4th 972, 1009.

- Fee award of $185,000 affirmed following pre-trial settlement of $75,000 in exchange for plaintiff's return of a car worth $45,000. *Goglin v. BMW of North America*, (2016) 4 Cal.App.5th 462.

- Fee award of $1,100,000 affirmed on appeal when plaintiff recovered $30,300 in damages in an employment case. *Harmon v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 419.

- Fee award of $470,000 affirmed on appeal when plaintiff recovered $37,500 in damages in an employment case. *Vo v. Los Virgenes Municipal Water Dist.* (1998) 79 Cal.App.4th 440.

### 4.    The fee award is calculated using the lodestar adjustment method.

The determination of what constitutes a reasonable fee

1  "begins with the 'lodestar,' i.e., the number of hours reasonably

2  expended multiplied by the reasonable hourly rate."  *Graciano v.*

3  *Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4[th] 140, 154.

4  The lodestar method has three steps: (1) determine the number of

5  hours; (2) multiply the hours by an appropriate hourly rate; and

6  (3) adjust the lodestar to account for any relevant "multiplier"

7  factors.  *PCLM Group Inc. v. Drexler* (2000) 22 Cal.4[th] 1084, 1095.

8

                              Step 1:
9                Determine the number of hours to include.

10      The time reasonably spent on a case "includes all time

11  reasonably expended in pursuit of the ultimate result achieved in

12  the same manner as an attorney traditionally is compensated by a

13  fee-paying client for all time reasonably expended on the matter."

14  *Hensley v. Eckerhart*, (1983) 461 U.S. 424, 431.  This includes

15  time spent in all types of activities that a prudent lawyer may

16  reasonably employ in the prosecution of the case, including pre-

17  litigation activities, discovery and investigation, conferring

18  with clients and counsel, court appearances, research, briefing,

19  drafting and revising pleadings, settlement negotiations, waiting

20  in court for assignment to a court room, necessary travel and

21  preparation of the attorney's fees application.  See Richard M.

22  Pearl, *California Attorney Fee Awards* §§12.2-12.8 (2d ed. 2003).

23      A trial court uses counsel's time records as a starting

24  point for the lodestar calculation.  *Horsford v. Board of*

25  *Trustees of California State University*, (2005) 132 Cal.App.4[th]

1   359, 397.  As officers of the court, counsel's verified time

2   records are "entitled to credence in the absence of a clear

3   indication that the records are erroneous."  *Id* at 396.  As

4   established by the declarations and time records submitted

5   herewith, 411.2 hours were reasonably spent on this case.

Step 2:
Determine the reasonable hourly rate.

8   As established by the declarations filed herewith and

9   confirmed by fees awarded to plaintiff's counsel in similar cases,

10  $450 per hour is a reasonable hourly rate for litigation of an

11  automobile-related consumer fraud case by lawyers with the skills

12  and experience of plaintiff's counsel in San Diego County.

Step 3:
Adjust the Lodestar to arrive at a reasonable fee award
based on relevant enhancement factors.

A trial court must consider the "relevant factors for

awarding an enhancement multiplier."  *Horsford, supra,* 132

Cal.App.4th at 400.  The failure to do so is an abuse of

discretion.

**Enhancement Factor 1: Novelty and Difficulty of
Questions Involved**

The novelty and difficulty of the questions involved in this

case are encompassed in the hourly rate.  The plaintiff is not

requesting a multiplier based on this factor.

**Enhancement Factor 2: The Skill Displayed and Results Obtained.**

The plaintiff submits it takes a great deal of skill to obtain a significant verdict in a case involving a used car worth only a few thousand dollars.  Particularly, when the plaintiff must testify through an interpreter.

As this Court knows, San Diego juries are careful about awarding large verdicts and rarely do so in cases without physical injury or substantial economic loss.  Jurors are skeptical about the sacrifice and investment of resources required for a trial over what appears to be a relatively minor matter.

Only by carefully preparing and honestly presenting a compelling case, for a credible plaintiff, backed-up with solid evidence can the jury come to understand a substantial verdict is warranted.  Plaintiff submits that her lawyers displayed a high degree of skill and achieved an outstanding result.  The plaintiff submits that a multiplier of .1 is warranted for this factor.

**Enhancement Factor 3: The Extent to Which the Nature of the Litigation Precluded Other Employment and the Delay in Payment of Fees.**

Over the last 18 months plaintiff's counsel has spent hundreds of hours working on this case without compensation. This effort could have been invested on other cases to generate current income.  Nevertheless, the scope of this case was not so large that it precluded counsel from accepting cases to an extent that an enhancement is warranted.  The issue of delay in payment

is significant but will be addressed in connection with contingent risk.

**Enhancement Factor 4: Contingent Risk.**

The plaintiff and her family, like most ordinary people, could not afford to pay attorney's fees on an hourly basis.  She could not afford to pay costs.  Accordingly, to obtain counsel, she agreed to pay fees at the rate of $450 per hour and reimburse the litigation costs advanced, but only if she recovered money from the defendant.

This arrangement provided her with experienced lawyers and access to the court system.  It spared her the indignity of having to give up her just claims when faced with the defendant's stubborn dishonesty and superior economic strength.  But the arrangement created a serious economic risk for the plaintiff's lawyers.  They have spent more than 400 hours working on the case without compensation, while making regular monthly payments for overhead and to sustain their families.  Furthermore, they have spent over $6,000 from their own pocket for costs such as depositions, jury fees, and a court reporter for the trial.

The California Supreme Court explains the rationale for a contingent risk multiplier as follows:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the

lawyer) is much higher than that of conventional loans. *Ketchum v. Moses*, (2001) 24 Cal.4th 1122, 1132 (citations omitted).

The California Supreme Court goes on to explain why the trial courts must account for this economic reality when making statutory fee awards:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases. *Id.*

When competent counsel are unwilling to take on these cases, vulnerable people are denied access to the civil justice system, and the people who take advantage of them go unpunished.

The plaintiff submits that a 0.4 multiplier for contingent risk is warranted in this case.

**5.   CONCLUSION.**

The Court should award reasonable attorney fees as follows:

| | |
|---|---|
| Lodestar (411.2 x $450/hr.) | $185,040 |
| Multiplier/Skill Displayed and Results Obtained | $18,504 |
| $  X .1 | |
| Multiplier/Contingent Risk | $74,016 |
| $  X .4 | |
| Total fee award | $277,560 |

1          Respectfully submitted.

2                                          DUMBECK & DUMBECK

3    Dated: 7.14.17

4                                          By:  Jon B. Dumbeck
                                           Attorneys for Plaintiff
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

17
Plaintiff's Motion for Attorney Fees

1                     **DECLARATION OF JON B. DUMBECK**

2       I, Jon B. Dumbeck, declare as follows:

3       1.   I am an attorney duly licensed to practice before all

4 the courts of the State of California.  I am counsel for

5 plaintiff Guadalupe Guzman and one of the attorneys primarily

6 responsible for the handling of this case.  I have personal

7 knowledge of the facts stated herein and, if called upon to do

8 so, I could and would competently testify thereto.

9       2.   Ms. Guzman could not afford to pay our fees on an

10 hourly basis.  We agreed to represent her on a contingent fee

11 basis at the rate of $450 per hour.  We also agreed to advance

12 all litigation costs beyond $750.00 contributed by Ms. Guzman.

13 To date, we have advanced more than $6,408 in costs.  Under our

14 agreement, if Ms. Guzman does not prevail in this matter and

15 obtain a monetary recovery from the defendant, we will not be

16 compensated for our time or reimbursed for the costs we have

17 advanced.

18       3.   We have now worked on this case for more than 18 months

19 without compensation. Handling this case on a contingent fee

20 basis is a serious economic risk.  In order to continue providing

21 access to the courts for ordinary individuals, we depend on the

22 courts to fairly compensate us for this risk when making a fee

23 award under a consumer protection statute.

24       4.   I have been practicing law for over 22 years.  During

25 that time I have tried 20 civil cases to jury verdict.

1        5.   In 1996, I founded a law firm with my brother, Jason

2    Dumbeck.  In 2000, Curtis King, my college roommate joined our

3    firm.  The three lawyers in our firm have been practicing

4    together since 2000.  We have an unconventional practice.  We are

5    dedicated to helping ordinary people use the civil justice system

6    to fight fraud, oppression, and the abuse of power.  We seek to

7    provide high quality representation to our clients, most who

8    can't afford to pay us, and allow them to stand-up against even

9    the largest corporations and the excellent lawyers these

10   corporations hire.

11       6.   Most of our clients are poor.  Many, like Ms. Guzman,

12   can't speak English.  We are willing to take a case to trial that

13   involves a relatively small amount of economic damages, when

14   important principals are involved.  For us, this is an enormously

15   satisfying way to practice.

16       7.   Since 1999, a significant portion of our practice has

17   involved representing individual plaintiffs in fraud cases

18   against car dealerships and finance companies.  I am familiar

19   with the rates regularly charged by attorneys in San Diego County

20   in these cases.  Our billing rate of $450 per hour is well within

21   the range of rates charged by attorneys of similar experience,

22   skill, and expertise for comparable services.  For example, in

23   *Goglin v. BMW of North America*, (2016) 4 Cal.App.5th 462, the

24   court of appeal affirmed Judge Joan M. Lewis' fee award of $575

25   per hour for a local auto fraud lawyer.

8.    We have been awarded fees at the rate of $450 per hour in other similar cases.  For example, Judge Timothy M. Casserly awarded fees based on our rate of $450 per hour in *Madrid v. Angelo's Kars*, San Diego Superior Court Case No: 37-2011-00059469-CU-FR-NC.  The *Madrid* case also involved fraud in the sale of a used pick-up truck that couldn't pass a smog test. After a 4-day trial, the jury returned a verdict for the plaintiff and awarded $20,000 in economic damages (for loss of use), $30,000 non-economic damages, and $250,000 in punitive damages.  The trial court awarded attorney's fees of $236,406 calculating the lodestar at the rate of $450 per hour for the three attorneys in our firm, and adding .4 multiplier for contingent risk and delay.  Attached as Exhibit "A" is a true and correct copy of the order granting attorney's fees in *Madrid*.

9.    More recently, in February 21, 2017, we were awarded statutory fees at the rate for $450 per hour by the arbitrator in *Gagnon v. Tuttle-Click, Inc*.  In *Gagnon*, Curtis King and I represented the buyer of a new pick-up truck who alleged the dealer's employees had forged his signature on a false credit application.  After a one day hearing, the arbitrator, William J. Tucker, awarded $17,745.17 to Mr. Gagnon for the misappropriation of signature.  Mr. Tucker also made a fee award of $63,504 calculating the lodestar at the rate of $450 per hour for our time and applying a .2 multiplier for contingent risk.  Attached

1  hereto as Exhibit "B" is a true and correct copy of the Final

2  Award of Arbitrator in *Gagnon*.

3     10.  I was involved in preparing the billing records

4  submitted in support of this motion.  The attorneys in our firm

5  maintain time entries that are generally prepared on a

6  contemporaneous basis as work is performed on a case.

7     11.  I reviewed all of the time entries and exercised

8  billing judgment by removing and/or reducing time entries I

9  deemed non-compensable or excessive.  The actual time we spent on

10 the case, was far more than what is included.

11    12.  A table with the audited time entries for our work on

12 this case is attached as Exhibit "C".  As documented therein, the

13 attorney's collectively spent 411.2 billable hours prosecuting

14 this case.  In my opinion these hours were reasonable and

15 necessary and would be properly billed to a client paying by the

16 hour.

17    I declare under the penalty of perjury of the law of the

18 State of California that the foregoing is true and correct and

19 that this declaration was executed on July 14, 2017.

20

21    _____

22    Jon B. Dumbeck

23

24

25

1

2

**DECLARATION OF CURTIS M. KING**

3

I, Curtis M. King, declare as follows:

4

1.    I am an attorney duly licensed to practice before all

5

the courts of the State of California

6

2.    I have been practicing law for a total of 20 years.

7

During that time I have tried, 10 jury trials to verdict in cases

8

involving fraud in the sale of an automobile.   In each of these

9

trials, I represented individual plaintiffs who were defrauded

10

while purchasing a vehicle from a dealership.   I have handled

11

hundreds of similar cases that were resolved by settlement,

12

mediation, arbitration or court trial.

13

3.    Although much of our practice has been devoted to

14

automobile fraud cases, we have also represent individual

15

plaintiffs in other civil cases including wrongful termination,

16

financial abuse of an elder, insurance bad faith, real estate

17

fraud, sexual harassment, and medical malpractice.

18

4.    Most of our cases involve claims of punitive damages.

19

Over the years, we have repeatedly obtained jury verdicts

20

including punitive damages and have defended them on appeal.   One

21

of our cases resulted in a published opinion clarifying the

22

"managing agent" evidence required to hold a corporation liable

23

for punitive damages.   *Davis v. Kiewit Pacific Co.*, (2013) 220

24

Cal. App.4th 358.

25

1    5.   *Davis* was a FEHA wrongful termination case in Imperial

2  County.   The trial court granted summary adjudication of the

3  claim for punitive damages.   In March of 2012, the case was tried

4  in, and the jury returned a verdict for the plaintiff for

5  $270,000 in damages.   The trial court awarded attorneys fees in

6  the amount of $683,750.

7    6.   After the defendant paid the judgment, we appealed the

8  order granting summary adjudication on punitive damage.   The

9  court of appeal reversed and reinstated the punitive damage

10  claim.   The case was finally resolved when the plaintiff accepted

11  a CCP 998 offer of an additional $1,000,001.

12    I declare under the penalty of perjury of the law of the

13  State of California that the foregoing is true and correct and

14  that this declaration was executed on July 14, 2017.

16  Curtis M. King

**EXHIBIT A**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
SOUTH BUILDING
TENTATIVE RULINGS - June 13, 2013

EVENT DATE: 06/14/2013     EVENT TIME: 01:30:00 PM     DEPT.: N-31

JUDICIAL OFFICER: Timothy M. Casserly

CASE NO.:    37-2011-00059469-CU-FR-NC

CASE TITLE:  MADRID VS. ANGELO'S KARS

CASE CATEGORY: Civil - Unlimited          CASE TYPE: Fraud

EVENT TYPE: Motion Hearing (Civil)

CAUSAL DOCUMENT/DATE FILED:

---

**ONE: The Court issues the following ruling on Plaintiff Frederick Madrid's motion for an award of attorney's fees:**

Plaintiff Frederick Madrid's motion for an award of attorney's fees pursuant to Civil Code §§ 1780(d), 2983.4, and 1717 is granted.

As the prevailing party, Plaintiff is entitled to a mandatory award of attorney's fees pursuant to three consumer protection statutes:

The Consumer Legal Remedies Act ("CLRA") per Civil Code § 1780(d):
(e) The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section. ..."

The CLRA mandates a fee award that fully compensates counsel for all time reasonably spent prosecuting the case. (See *Brighton v. Cigna Health Plans* (1999) 21 Cal.4th 1066, 1077.)

The Automobile Sales and Finance Act ("ASFA") per Civil Code § 2983.4
Civil Code § 2983.4. Prevailing party's right to attorney's fees and costs – provides:
"Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action on a contract or purchase order subject to the provisions of this chapter regardless of whether the action is instituted by the seller, holder or buyer. Where the defendant alleges in his answer that he tendered to the plaintiff the full amount to which he was entitled, and thereupon deposits in court, for the plaintiff, the amount so tendered, and the allegation is found to be true, then the defendant is deemed to be a prevailing party within the meaning of this section."

Here the subject matter in this case involved a contract subject to the ASFA and Plaintiff is entitled to his reasonable attorney's fees and costs accordingly.

Civil Code § 1717
Civil Code § 1717 (a) provides: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

---

Event ID: 1226180                TENTATIVE RULINGS                Calendar No.: 24

Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void." (Civil Code § 1717.)

In this case, the pre-printed form contract used by the Defendants contains an attorney's fees provision in favor of the seller.  Civil Code § 1717(a) changes the unilateral fee provision in the contract at issue so that it applies to both parties.  As the prevailing party, Plaintiff is entitled to recover his attorney's fees pursuant to Civil Code § 1717(a). Here, in order to obtain counsel, Plaintiff agreed to pay fees at a rate of $450.00 per hour and reimburse costs advanced by his lawyers, but only if he recovered from the Defendant.  In *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132, the Court held: "As we explained in *Rader v. Thrasher* (1962) 57 Cal.2d 244, 253: " '[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." " The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Id* at 1132.

Plaintiff notes that under the CLRA and the ASFA, a fee award cannot be limited to forty percent (40%) of the judgment as typically called for in personal injury actions. (See *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 160.)

The determination of what constitutes a reasonable fee generally "begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1095.) "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132, (*Ketchum* ), citing *Serrano v. Priest* (1977) 20 Cal.3d 25, 49, (Serrano III ); see also *Serrano v. Unruh* (1982) 32 Cal.3d 621, 626, fn. 6, (Serrano IV ) [lodestar figure may be enhanced or diminished based on factors as those set out in Serrano III ].)

In this case, Plaintiff submits that his attorneys displayed a high degree of skill, both in their written briefs and before the jury at trial. Plaintiff contends that his counsel spent 368.9 hours wrong on this case for nearly two years without any compensation. In that regard Plaintiff only seeks a multiplier of 1.1 to the lodestar to account for these factors.   To account for the economic risk, Plaintiff requests a 1.3 multiplier to the lodestar figure.  Plaintiff requests a total of $232,406.00  as an award of reasonable attorney's fees which includes a lodestar amount of (368.9 hours x $450/hr. $166,005.00) plus an enhancement factor  for delay preclusion in an amount of $16,600) –plus an enhancement factor for contingent risk of $49,801.00 for a total of $232,406.00.  (See King Decl. ¶¶ 1-14; Jon Dumbeck Decl. ¶¶ 1-6; Jason Dumbeck Decl. ¶¶ 1-5; Pltf.'s Exhs. 1 and 2.)

The declarations of Plaintiff's counsel establish that the hourly rate they charged Plaintiff is not excessive and Defendant failed to provide admissible evidence that refutes the rates charged by the Plaintiff's attorneys.  There is no evidence supporting apportionment of the fees under the CLRA or otherwise.

CASE TITLE: MADRID VS. ANGELO'S KARS       CASE NUMBER:  37-2011-00059469-CU-FR-NC

Under the circumstances, Plaintiff has demonstrated it is also entitled to its fees and costs requested in this motion.

This is the tentative ruling for an appearance hearing at 1:30 p.m. on Friday June 14, 2013.  If no party appears at the hearing, this tentative ruling will become the order of the Court as of June 14, 2013.  If the parties are satisfied with the Court's tentative or do not otherwise wish to argue the motion, they are encouraged to give notice to the Court and to each other of their intention to appear, though this notice is not required.

**TWO & THREE: The Court issues the following ruling on Defendant Sports Auto Sales, Inc.'s motion for JNOV and motion for new trial:**

Defendant Sports Auto Sales, Inc.'s motion for judgment notwithstanding the verdict pursuant to CCP § 629 is denied.  There is substantial evidence to support the verdict.

Defendant Sports Auto Sales, Inc.'s motion for new trial is denied.
Defendant moves the Court for a new trial pursuant to CCP § 657, subdivisions (5), (6) and (7) on the grounds of: (1) excessive damages; (2) insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against the law; (3) error in law, occurring at the trial and excepted to by the party making application. (See CCP § 657, subdivisions (5), (6) and (7).)  Defendant's motion is based on the minutes before the Court and affidavits. (See Deft.'s Notice of intention to File Motion for New trial.)

Having reviewed the entire case file, the defendant's motion for new trial, the opposition and all relevant evidence and documentation provided, and after weighing the evidence the Court is not convinced from the entire record, including reasonable inferences therefrom, that the jury clearly should have reached a different verdict.  See CCP § 657.  The Court finds that defendant failed to provide a sufficient legal or factual basis for the relief requested and consequently failed to establish that a new trial is warranted pursuant to CCP § 657, subdivisions (5), (6) and (7), or otherwise.

This is the tentative ruling for an appearance hearing at 1:30 p.m. on Friday, June 14, 2013.  If no party appears at the hearing, this tentative ruling will become the order of the court as of June 14, 2013.  If the parties are satisfied with the court's tentative ruling or do not otherwise wish to argue the motion, they are encouraged to give notice to the court and each other of their intention not to appear, though this notice is not required.

**EXHIBIT B**

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

Re:  01-16-0002-5008
     Rodney Gagnon              (Claimant)
     v.
     Tuttle-Click, Inc.        (Respondent)

## FINAL AWARD OF ARBITRATOR

I, William J. Tucker, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement in and between the above-named parties, and having been duly sworn. Claimant having been represented by Jon Dumbeck and Curtis King of Dumbeck & Dumbeck, and Respondent having been represented by Thomas Normandin of Prenovost, Normandin, Bergh & Dawe. and having duly heard the proofs and allegations of Claimant and Respondent at an arbitration hearing on January 18, 2017, do hereby render this FINAL AWARD OF ARBITRATOR, as follows:

## BACKGROUND FACTS

On October 2, 2015, Claimant Rodney Gagnon went to Respondent Tuttle-Click, Inc. to determine if the dealership had a truck he would like to buy after trading in the Ford F150 truck he currently owned. Mr. Gagnon was in the business of hauling debris in a trailer behind his pick-up truck, and he had determined that the Ford F150 he currently owned did not have sufficient horsepower. He wanted a truck with greater horsepower that could more easily pull his trailer.

Mr. Gagnon was met at Tuttle-Click by the salesman, Assad Rusta.   What happened from that point on is in dispute. Mr. Gagnon states that he was interested in a Dodge 2500, and that salesman Rusta took him for a test drive in that vehicle. Mr. Gagnon says that he liked the vehicle, and after the test drive, he and Mr. Rusta sat down

1

together and Mr. Gagnon filled out a one-page credit application which he gave to Mr. Rusta, and told Mr. Rusta how much he could make as a down payment on the Dodge 2500. Mr. Gagnon testified that Salesman Rusta then took the credit application to Sales Manager Lionel Sandoval. According to Mr. Gagnon, Mr. Rusta returned, and asked Mr. Gagnon if Mr. Gagnon could make more of a down payment, to which Mr. Gagnon said no. According to Mr. Gagnon, Mr. Rusta returned to Sales Manager Sandoval, who then came over to Mr. Gagnon and told him the Dodge 2500 was too much truck for him, which Mr. Gagnon understood to mean was too expensive for him to purchase.

According to Mr. Gagnon, Sales Manager Sandoval then took Mr. Gagnon to a Dodge Rebel truck, which they then test drove. Mr. Gagnon liked the Dodge Rebel, and told Mr. Sandoval that he wanted to trade in his Ford F150 and purchase the Dodge Rebel.

Mr. Gagnon testified that when he first sat down with Salesman Rusta after his test drive, he filled out a Long Form Credit Application and gave it to Mr. Rusta who then, apparently, gave it to Sales Manager Sandoval.

According to Salesman Rusta, Mr. Gagnon said he was interested in purchasing a Dodge truck, and that Mr. Rusta then took him on a test drive. Mr. Rusta did not specify which truck they test drove. However, Mr. Rusta stated that after the test drive, Mr. Gagnon said he liked the truck, and then told Mr. Rusta he would visit with Mr. Sandoval for further discussions, because he had done business with Mr. Sandoval on two prior occasions.

According to Mr. Rusta, he prepared a "due bill," but had no further contact or communication, at least not that he could recall, with Mr. Gagnon, and that thereafter, Mr. Gagnon's discussions concerning purchasing a truck were with Sales Manager Sandoval. According to Salesman Rusta, he did not prepare, or have Mr. Gagnon prepare, a Long Form Credit Application while he was with Mr. Rusta and, therefore, Mr. Rusta did not give Mr. Gagnon a copy of any credit application.

Sales Manager Lionel Sandoval testified that he did not tell Mr. Gagnon that a Dodge 2500 was too much truck for him, and that the only truck Mr. Gagnon told him he was interested in was a Dodge Rebel. Sales Manager Sandoval said that he gave two portions of the Long Form Credit Application, but not the entire Long Form Credit Application, to Mr. Gagnon to review and sign, which he did. He states that Mr. Gagnon

2

provided him with the information and he, Mr. Sandoval, typed it up and gave it to Mr. Gagnon, who then signed it. Mr. Sandoval also stated that he took down information Mr. Gagnon provided him, typed up a credit application, a copy of which appears in Exhibit 13, and that Mr. Gagnon then reviewed and signed it.

Sales Manager Sandoval testified that after Mr. Gagnon reviewed and signed this paperwork, the Finance Manager, Keith Martindale, came out and went over the paperwork and talked to Mr. Gagnon about it, after which the Finance Manager took the paperwork back to his office, and thereafter invited Mr. Gagnon in for further discussions.

At that time, according to Mr. Martindale, his customary practice would have been to go over certain options, such as a security system, an extended warranty package, and other items to see if Mr. Gagnon was interested in purchasing them, and then obtained a down payment from Mr. Gagnon. Mr. Martindale does not recall his dealings with Mr. Gagnon specifically, but did not dispute Mr. Gagnon's testimony that he provided Mr. Martindale with $1,000 as a portion of the down payment, by way of credit card, and he agreed to, and later did in fact, give Mr. Martindale a check for $1,800, as the remainder of his down payment.

Mr. Gagnon testified that Mr. Martindale agreed that he would simply hold the check and not cash it. Mr. Martindale testified, and Mr. Gagnon did not dispute, that Mr. Martindale would obtain the remaining $1,800 in down payment from a refund on an extended warranty package that Mr. Gagnon had purchased for the Ford F150, only a portion of which he had used. In fact, Tuttle-Click did obtain $1,800 by way of such refund, and applied it toward the down payment.

It is apparent that the down payment was made toward the end of Mr. Gagnon's visit with Finance Manager Martindale, and that Mr. Gagnon made that down payment at 5:27 PM, as Exhibit 8 reflected. Mr. Gagnon testified that he had to pick up his child at school or daycare by 6 PM, when the school or daycare closed and, therefore, he had to leave the dealership prior to that time and right after he made the down payment. All parties agree that after Mr. Gagnon was done in the finance department, Salesman Rusta delivered the Dodge Rebel to Mr. Gagnon, who then left in it. No one disputed Mr. Gagnon's testimony to that effect.

3

Within the next month or so, three serious problems developed with the Dodge Rebel. Mr. Gagnon brought the Dodge Rebel back to the dealership, which fixed the problems. Apparently, the problems were completely fixed within approximately two months after Mr. Gagnon purchased the truck, and from that point until the present the truck has been problem-free, and currently has 38,000 miles on it.

According to dealership personnel, Mr. Gagnon was provided with a signed copy of the credit application he signed before he left the dealership, which is required by law, as well as by Tuttle-Click's policy. According to Mr. Gagnon, he did not receive a signed copy of his credit application before he left the dealership.

Exhibit 13 is a credit application which, on the third page, contains Mr. Gagnon's signature. That credit application states that Mr. Gagnon is a "Manager" and a "Professional", and earns $7,800 a month. Mr. Gagnon, although acknowledging his signature on the third page, denies that he provided such information to any dealership personnel, and denies that he signed any credit application which had those three items of information on it. Mr. Gagnon testified that he owns his own business, is not a manager, is not a professional, and earns only approximately $2,500 a month.

An expert in dealership credit applications, Mr. Cohen, testified that the number appearing on the bottom right-hand corner of the third page of Exhibit 13 indicates the date and time, down to the second, when that three-page form was printed out. According to his testimony, which is not disputed, the numbers on the lower right-hand side of that page reflect the document was printed out at 8:22 PM on October 2, 2015. Although Tuttle-Click does not dispute the fact that that is what the numbers indicate, it contends that those numbers are a mistake, because Mr. Gagnon signed that credit application before he left the dealership at approximately 5:27 PM that same day.

Mr. Gagnon provided the following explanation for how his signature could appear on a credit application that was printed out at approximately 8:22 PM on October 2, 2015, approximately three hours after he had left the dealership. According to Mr. Gagnon, he was told by Finance Manager Martindale to return with an $1,800 check and proof of insurance, and Mr. Gagnon testified he did so the following day. No dealership personnel contradicted this testimony. Indeed, Exhibit 9, a Statement of Facts was provided by Finance Manager Martindale to Mr. Gagnon, on which Mr. Gagnon wrote in his own handwriting, thereafter signing it, which stated that, "Rodney Gagnon will return

4

with a copy of insurance and a check for the amount of $1,800. This check will be held and not cashed."

Mr. Gagnon testified that when he returned the following day he was asked to sign some paperwork, and he did. That would explain how Mr. Gagnon's signature appears on the above-described credit application, Exhibit 13.

## CLAIM FOR MISAPPROPRIATION OF IDENTITY

Mr. Gagnon asserts three claims, the first of which is for Misappropriation of Identity under Civil Code section 3344, which provides in pertinent part:

> Any person who knowingly uses another's name . . . in any manner, . . .for purposes of . . . soliciting purchases of, products, . . . without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of Seven Hundred and Fifty Dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

I find that Mr. Gagnon was not presented with a credit application which contained the statement that his income was $7,800 per month, which he then signed. I find that the credit application set forth in Exhibit 13 was printed out at 8:22 PM on October 2, 2015, after Mr. Gagnon had left the dealership, and that his signature which appears on the third page (on which none of the false information appears) was made by him the following

5

day at the dealership. I find that Mr. Gagnon did not consent to the use of his signature on the credit application that falsely stated that his income was $7,800 per month.

Tuttle-Click contends that the 8:22 PM time listed on the bottom right corner of the third page of Exhibit 13 is a mistake, but has presented no evidence to that effect. I find that the time reference is not a mistake, and is accurate.

Tuttle-Click further argues that even if the statement of $7,800 in monthly income is false, Civil Code section 3344 does not apply, because Mr. Gagnon's name is not used on the credit application for the purpose of soliciting a purchase of a "product." Although one might normally think of a "product" as a tangible item, I find that included within the meaning of "product" in Section 3344 is the dealership's contract with Mr. Gagnon which the dealership sold to LBS, the lender who purchased the subject contract.

Tuttle-Click asserts that Civil Code section 3344 applies only when the plaintiff's name or signature has commercial value. However, the statute does not so state and I find that no such requirement exists. To the same effect, Tuttle-Click contends that Mr. Gagnon's "signature did not make the contract or credit application more valuable." Aside from the fact that this would be irrelevant, if true, Mr. Gagnon's signature did make the contract and credit application more valuable, because neither document would have come into existence without his signature.

Although I do not find that Mr. Gagnon has in fact suffered any damages as a result of the wrongful use of his name and signature on the credit application, I note that Mr. Gagnon is entitled to certain remedies under Section 3344, regardless of the lack of any actual damages. As an example, he is entitled to $750, regardless of the fact he has no actual damages. He is also entitled to the profits Tuttle-Click earned on the transaction.

In that regard, the transaction included not only the dealership's sale of the Dodge Rebel to Mr. Gagnon, but also the sale of Mr. Gagnon's trade-in vehicle, the Ford F150, which Mr. Gagnon signed over to the dealership. That trade in, and the dealership's profit on the resale of that vehicle, would not have occurred if Mr. Gagnon had not qualified to purchase the Dodge Rebel truck. Mr. Gagnon's signature was used without his consent on the false credit application in order to qualify Mr. Gagnon to purchase that truck.

6

The parties agree that the profit on the sale of the Dodge Rebel was $6,311.26. The parties further agree that Mr. Gagnon was given $32,000.00 for the trade-in of the Ford F150, which was thereafter sold by the dealership for $43,000. Section 3344 requires that the seller, in this case Tuttle-Click, provide proof of any expenses incurred in connection with the sale, in order to deduct any such amount from the profits it received. Tuttle-Click has provided no such information, except for Sales Manager Sandoval's testimony that he received a 5% commission on the sale of the Dodge Rebel. Consequently, Mr. Gagnon is entitled to the full $11,000.00 profit on the sale of the trade-in, and $6,311.26 minus a 5% commission. 5% of $6,311.26 is $315.56. Thus, Mr. Gagnon is entitled to $5,995.70 ($6,311.26 - $315.56) + $11,000.00 + $750.00, for a total of $17,745.70.

Although Section 3344 provides that the plaintiff "may" be awarded punitive damages, an award of punitive damages is not automatic. Rather, Mr. Gagnon must make the requisite showing for an award of punitive damages. Since it is the corporate dealership which Mr. Gagnon has sued, he must prove by clear and convincing evidence that Tuttle-Click has either ratified the wrongful acts of its agents, or that the wrongful acts were committed by a "managing agent," meaning, an employee entitled to exercise substantial independent authority and judgment in corporate decision-making, such that his decisions were such as to ultimately determine corporate policy. See Civ. Code §3294; Barton v. Alexander Hamilton Life Inc. Co. of America (2003) 110 Cal. App. 4th 1640, 1644; White v. Ultramar, Inc. (1999) 21 Cal. 4th 563, 566-567, 572.

It is not clear which of the above-referenced employees of Tuttle-Click caused Mr. Gagnon's name to be used in connection with the false credit application. However, I find that Mr. Gagnon has failed to prove that any of those individuals were "managing agents" of Tuttle-Click. Consequently, I find that Mr. Gagnon is not entitled to an award of punitive damages.

## MR. GAGNON'S CLAIM FOR BREACH OF FIDUCIARY DUTY THROUGH FRAUDULENT CONCEALMENT

Mr. Gagnon contends that he placed trust and confidence in Tuttle-Click and its personnel, and that in dealing with him, they accepted that trust and confidence. Therefore, Mr. Gagnon asserts, the dealership owed him a fiduciary duty. Suffice it to say that Mr. Gagnon has submitted no authority to the effect that an automobile dealership owes a potential customer a fiduciary duty, and it appears to me that Mr. Gagnon's

7

dealings with Tuttle-Click were an arms' length commercial transaction. Consequently, I find that no such fiduciary duty exists. Therefore, I find against Mr. Gagnon on this particular claim.

## MR. GAGNON'S CLAIM FOR RESCISSION AND RESTITUTION

Mr. Gagnon's third claim is for rescission and restitution under Civil Code section 1692. Although rescission and restitution might otherwise be awardable, I find that it is more appropriate to provide Mr. Gagnon with the other remedies he has requested, namely, those set forth under Civil Code Section 3344, discussed above, and that under the circumstances rescission and restitution are not warranted.

Rescission is an equitable remedy, based on principles of fairness. I do not believe it would be fair, in light of the award provided to Mr. Gagnon under his claim of violation of Civil Code Section 3344, to also, or even alternatively, provide him with rescission and restitution. I note that for over one year now, Mr. Gagnon has been driving the Dodge Rebel truck without a problem, and has put 38,000 miles on it. While it is true that Mr. Gagnon has had no choice but to do so, it is also clear that he has obtained value from his use of the truck, and will continue to obtain value from continued use of the truck in the future.

Mr. Gagnon asserts that he should be awarded rescission and restitution, because LBS, the lender, could, at any time, demand that Mr. Gagnon pay the remaining balance due on the truck. He claims that LBS can do so based on a statement to the following effect on page 5 of the Retail Installment Sales Contract (Exhibit 6): "You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means: . . . You give false, incomplete, or misleading information on a credit application. . . . "

However, Mr. Gagnon did not give false, incomplete or misleading information on a credit application. Rather, Tuttle-Click did, and this Final Award will establish that fact. Furthermore, it is highly unlikely that LBS will learn that it was provided with inaccurate information concerning Mr. Gagnon's monthly income. Mr. Gagnon has no reason to so inform the lender, nor does the dealership. Who else would do so?

8

Of course, if Mr. Gagnon fails to continue to make the payments called for under the sales contract, the lender could accelerate all payments due under the contract and/or repossess the vehicle. But that would also be true if the credit application did not contain any false information, and correctly stated Mr. Gagnon's monthly income. Furthermore, it is highly unlikely Mr. Gagnon will be unable to keep up on his monthly payments. The monthly payments on the Dodge Rebel are only $19 per month more than the monthly payments Mr. Gagnon was successfully making on the Ford F150 he traded in. Too, Mr. Gagnon's wife earns between $8,000.00 and $9,000.00 a month in income, and one would expect her to contribute to the monthly payment for the Dodge Rebel, if need be.

## AWARD OF ATTORNEY'S FEES

Mr. Gagnon is the prevailing party in this arbitration. Specifically, he is the prevailing party on his claim that Tuttle-Click violated Civil Code section 3344, which provides for an award of attorney's fees to the prevailing party. Since all of Mr. Gagnon's claims arise out of the same nucleus of operative facts, namely, the submission of a false credit application in connection with the instant sales transaction, with the exceptions noted below, Mr. Gagnon is entitled to an award of fees for all work on all claims he has asserted. Nor does Tuttle-Click argue to the contrary.

Mr. Gagnon seeks attorney's fees based on the lodestar rate of $450 an hour, with a multiplier of 1.2 based on the risk inherent in the fact his attorneys took the case on a contingent fee basis. Mr. Gagnon has submitted evidence that $450 an hour is within the range of hourly rates charged by plaintiffs' attorneys handling cases of fraud in the sale of vehicles on a contingent fee basis. Tuttle-Click asserts that $450 an hour is excessive, but submits no evidence that that rate is not within the mainstream for plaintiffs' attorney's handling such cases. Although it may be that a somewhat lesser hourly rate would be more appropriate, I also believe that a multiplier greater than 1.2 might also be more appropriate. Consequently, with the exceptions noted below, I believe the fees and costs requested by Mr. Gagnon are appropriate.

I find that Mr. Gagnon is not entitled to any fees for his attorneys' preparation of written discovery on April 12 and May 25, 2016, and review of Respondent's responses to that discovery on June 27, 2016, encompassing a total of 3.0 hours. Consequently, I am subtracting $1,350.00 from the lodestar amount of $54,270.00 to arrive at an appropriate lodestar amount of $52,920.00. I am then multiplying that amount by 1.2 to

9

arrive at an attorney's fees figure of $63,504.00.  I am also deducting $456.26 from the costs requested of $3,389.22, to arrive at an award of costs of $2,932.96, because $456.26 appears to be the costs associated with the filing of a Complaint in court.  No such Complaint should have been filed, because the parties agreed to arbitrate this dispute.

## AWARD

For the above reasons, I find that Claimant Rodney Gagnon is the prevailing party in this arbitration, and I award him against Respondent Tuttle-Click, Inc. $17,745.70, plus attorney's fees in the amount of $63,504.00 and costs in the amount of $2,932.96, for a total Award of $84,182.66.

The administrative fees of the American Arbitration Association (AAA) totaling $2,400.00, shall be borne as incurred. The compensation of the arbitrator totaling $1,500.00 shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied.

Dated:  February 21, 2017

William J. Tucker, Arbitrator

10

**EXHIBIT C**

Guadalupe Guzman v. Point Loma Pre-Owned, Inc.
Dumbeck & Dumbeck
Time Records

Atty:   Curtis M. King (CMK)
        Jon B. Dumbeck (JBD)
        Jason D. Dumbeck (JDD)

| DATE | ATTY | DESCRIPTION | TIME |
|---|---|---|---|
| 12/29/15 | JBD | TELEPHONE CONFERENCE WITH GUADALUPE GUZMAN REFERRAL FROM MOISES CORONA AT NORTH COUNTY LIFELINE; RE: PROBLEM WITH DEALERSHIP POINT LOMA PRE-OWNED; CONDUCT INITIAL IN OFFICE MEETING WITH GUADALUPE GUZMAN; REVIEW AND EVALUATE DOCUMENTS FROM TRANSACTION; INTERVIEW HUSBAND IVAN GUZMAN; PREPARE OPENING DOCUMENTS; DRAFT INTAKE NOTES | 3.3 |
| 1/6/16 | JBD | TELEPHONE CONFERENCE WITH CLIENT | 0.1 |
| 1/7/16 | JBD | OFFICE CONFERENCE WITH CLIENT; REVIEW AND EVALUATE ADDITIONAL DOCUMENTS FROM TRANSACTION | .5 |
| 1/7/16 | CMK | REVIEW AND EVALUATE FILE, RESEARCH AND DRAFT MEMO RE STATEMENT OF PURPOSE, IDENTITY OF PARTIES AND WITNESSES, ACTIONABLE CONDUCT, TIMELINE OF CRITICAL EVENTS, PROPOSED CAUSES OF ACTION, DAMAGES TO INVESTIGATE, SETTLEMENT OR VERDICT TARGET, AND PROPOSED RESOLUTION PLAN | 2.8 |
| 1/8/16 | CMK | DRAFT PROPOSED COMPLAINT | 2 |
| 1/8/16/ | JBD | REVIEW AND EDIT PROPOSED COMPLAINT; MEETING WITH CMK RE: LITIGATION OPTIONS AND SETTLEMENT STRATEGY | 0.5 |

| 1/9/16 | CMK | DRAFT LETTER FOR CLIENT TO WESTLAKE | 0.3 |
|--------|-----|-------------------------------------|-----|
| 1/14/16 | JBD | TELEPHONE CONFERENCE WITH CLIENT FOLLOW-UP QUESTIONS FOR COMPLAINT; SCHEDULE MEETING | 0.1 |
| 1/14/16 | JBD | PREPARE FOR MEETING WITH CLIENTS; MEET WITH CLIENT REVIEW DRAFT COMPLAINT AND STRATEGY; INTERVIEW RE: TITLE AND CONDITION OF TRADE-IN YUKON; REVIEW AND EVALUATE ADDITIONAL DOCUMENTS; AND LAY OUT PLAN FOR WESTLAKE AND POTENTIAL EXPERT WITNESS | 2.3 |
| 1/19/16 | JBD | RECEIVE AND EVALUATE REPORT THAT WESTLAKE HAS BEEN CALLING CLIENT AND SHE ASKED THEM NOT TO CALL HER ANYMORE.  THE REP TOLD HER THAT THEY WERE GOING TO CONTACT THE DEALERSHIP TO ASK THEM WHAT WAS GOING ON WITH THAT VEHICLE AND THAT THEY WOULD CALL HER BACK.  FOLLOW UP WITH CLIENT RE: SAME. | 0.2 |
| 1/25/16 | JBD | RECEIVE AND EVALUATE PROOF OF SERVICE OF CORRESPONDENCE BY CERTIFIED MAIL TO WESTLAKE FROM GUADALUPE GUZMAN | 0.1 |
| 1/26/16 | CMK | EVALUATE FILE; CONDUCT ADDITIONAL RESEARCH; REVISE COMPLAINT; DRAFT SPECIAL INTERROGATORIES, REQUESTS FOR PRODUCTION, REQUESTS FOR ADMISSIONS, AND FORM INTERROGATORIES | 5.4 |
| 1/31/16 | JBD | TELEPHONE CONFERENCE WITH CLIENT | 0.3 |
| 2/3/16 | CMK | EVALUATE FILE AND INVESTIGATE POSSIBLE EXPERTS RE MECHANICAL CONDITION AND SAFETY OF VEHICLE | 2 |
| 2/3/16 | CMK | REVIEW, EVALUATE AND FINALIZE CIVIL CASE COVER SHEET | 0.1 |

| 2/3/16 | CMK | REVIEW, EVALUATE AND APPROVE SUMMONS | 0.1 |
|--------|-----|--------------------------------------|-----|
| 2/8/16 | JBD | RECEIVE AND EVALUATE REPORT FROM CLIENT THAT TRUCK PICKED UP 2/6/16 AROUND 4 P.M.  BY TOW TRUCK COMPANY. HUSBAND SIGNED PAPER AND GOT A COPY AND CARD FROM DRIVER, HE TOLD THE DRIVER THAT THE TRUCK HAD LOTS OF MECHANICAL PROBLEMS, AND THE DRIVER SAID THAT WAS A BAD THING FOR THE DEALER TO DO, THAT HE COULD HELP IF THE ATTORNEY WANTED.  SHE IS SENDING THE PAPER AND CARD TOMORROW. | .1 |
| 2/11/16 | JBD | OFFICE CONFERENCE WITH CLIENT RE: STATUS OF CASE AND DOCUMENTS FROM REPOSSESSION | 0.3 |
| 2/12/16 | JBD | REVIEW AND EVALUATE NOTICE OF HEARING FROM COURT; ORDER TO SERVE SAME | 0.1 |
| 3/10/16 | JBD | RECEIVE AND EVALUATE MESSAGE FROM CLIENT RE SHE RECEIVED A LETTER FROM DEALERSHIP THAT SHE WILL FAX, BUT SHE DOESN'T BELIEVE IT IS A NOTICE OF INTENT TO SELL THE TRUCK | 0.1 |
| 3/14/16 | JBD | TELEPHONE CONFERENCE WITH CLIENT REGARDING NOTICE OF INTENT AND RELATED DOCUMENTS FROM DEALERSHIP; REVIEW AND EVALUATE NOTICE OF SEIZURE/REPOSSESSION PERSONAL PROPERTY INVENTORY; LEGAL OWNER LISTED AS POINT LOMA PREOWNED NO STATUTORY NOTICE OF INTENT TO SELL MOTOR VEHICLE INCLUDED; RESEARCH AND PREPARE DRAFT MEMO RE: POTENTIAL CERRA V. BLACKSTONE CONVERSION | 0.4 |
| 3/14/16 | CMK | RECEIVE SEVERAL EMAILS AND DRAFT REPLY TO SURETY ON DEALER'S BOND RE DEADLINE FOR RESPONSIVE PLEADING | .1 |
| 3/15/16 | CMK | DRAFT NOTICE TO WESTLAKE RE REQUEST FOR RECORDS PURSUANT TO CALIFORNIA CONSUMER CONTRACT AWARENESS ACT | .3 |

| 3/16/16 | CMK | RECEIVE FAX AND EMAIL FROM WESTLAKE RE CREDIT APPLICATION; PRELIMINARY EVALUATION | .2 |
|---|---|---|---|
| 3/17/16 | JBD | RECEIVE TELEPHONE AND EMAIL MESSAGE FROM DEALERSHIP EMPLOYEE SAM RE: REQUEST FOR EXTENSION | 0.1 |
| 3/18/16 | JBD | DRAFT EMAIL TO SAM AT DEALERSHIP GRANTING EXTENSION | 0.1 |
| 3/28/16 | JBD | EVALUATE ANSWER OF DEFENDANT AND AFFIRMATIVE DEFENSE; RESEARCH DEFENSE COUNSEL ALI GOLCHIN | 0.2 |
| 3/31/16 | JBD | TELEPHONE CONFERENCE WITH CLIENT RE STATUS OF LITIGATION | 0.3 |
| 4/7/16 | CMK | PREPARE FOR AND ATTEND MEETING WITH CLIENT REGARDING SETTLEMENT OPTIONS; DEALER BUY-BACK FROM WESTLAKE; NEW DOCUMENT FROM DMV; AND FOLLOW UP FACTUAL INQUIRIES; PREPARE MEMORANDUM RE SAME | 1.2 |
| 4/11/16 | CMK | EDIT, AMEND AND FINALIZE DISCOVERY PACKET FOR DEFENDANT | .3 |
| 4/25/16 | JBD | MEETING WITH CLIENT; REVIEWED BANKING DOCUMENTS PREVIOUSLY FAXED TO DEFENDANT; FOLLOW-UP INTERVIEW | 0.5 |
| 5/11/16 | CMK | TELEPHONE CALL FROM COUNSEL GOING TO REPRESENT DEFENDANT AND REQUEST FOR DISCOVERY EXTENSION; GRANTED REQUEST | .1 |
| 5/24/16 | CMK | DRAFT CORRESPONDENCE TO DEFENDANT RE DISCOVERY RESPONSES OVERDUE AND PAST REQUESTED EXTENSION | .3 |

| 5/26/16 | CMK | RECEIVE AND EVALUATE VOICEMAIL FROM DEFENSE RE DISCOVERY AND SUBSTITUTION OF ATTORNEY | .1 |
|---------|-----|-----------------------------------------------------------------------------------------|-----|
| 6/13/16 | CMK | DRAFT CORRESPONDENCE TO ATTORNEY GOLCHIN FOR DEFENDANT RE NO SUBSTITUTION OF COUNSEL FILED AND MOTIONS TO COMPEL DISCOVERY IMMINENT | .3 |
| 6/13/16 | CMK | RECEIVE AND EVALUATE CORRESPONDENCE FROM TWO ATTORNEYS REGARDING DEFENDANT; PLACE CALL TO DEFENSE COUNSEL LUCERO AS REQUESTED AND LEFT VOICEMAIL | .2 |
| 6/22/16 | CMK | RECEIVE AND EVALUATE CORRESPONDENCE FROM DEFENSE RE RESPONSES WITHOUT OBJECTION TO BE PROVIDED BY 24TH OF JUNE | .1 |
| 6/22/16 | CMK | REVIEW FILE AND DRAFT NOTICE OF DEPOSITION FOR DEALER'S PMK AND DOCUMENT DEMANDS | 1.2 |
| 6/22/16 | CMK | REVIEW AND EVALUATE FILE AND PREPARE CASE MANAGEMENT STATEMENT | 0.5 |
| 6/22/16 | CMK | REVIEW AND FINALIZE NOTICE OF JURY FEE DEPOSIT | 0.1 |
| 6/24/16 | JBD | RECEIVE AND EVALUATE SUBSTITUTION OF ATTORNEY BRINGING IN STEVE LUCERO AND SUBSTITUTING OUT ALI GOLCHIN | 0.1 |
| 6/28/16 | CMK | DRAFT MOTION TO COMPEL RESPONSES TO DISCOVERY | 1.1 |
| 6/28/16 | CMK | DRAFT MOTION TO HAVE RFAS DEEMED ADMITTED | 1.9 |

| 7/5/16 | CMK | RECEIVE AND EVALUATE EMAIL FROM STEVE LUCERO | 0.1 |
|---|---|---|---|
| 7/7/16 | JDD | REVIEW FILE, PREPARE FOR CMC HEARING | 0.5 |
| 7/8/16 | JDD | TRAVEL AND APPEAR AT CMC IN DEPARTMENT 29; JUDGE DALQUIST CALLED CASE AT END OF CALENDAR BECAUSE DEFENSE COUNSEL FAILED TO APPEAR | 1.8 |
| 7/8/16 | JDD | PREPARE NOTICE AFTER HEARING FOR SERVICE ON DEFENSE COUNSEL | 0.2 |
| 7/13/16 | JBD | RECEIVE AND EVALUATE NOTICE OF TRIAL AND TRC SERVED BY COURT | 0.1 |
| 7/19/16 | CMK | REVIEW AND EVALUATE FILE; PLACE TELEPHONE CALL TO DEFENSE COUNSEL AND LEFT VOICEMAIL | .1 |
| 7/19/16 | CMK | DRAFT AMENDED DEPOSITION NOTICE TO RESCHEDULE DEPOSITION AFTER HEARING ON MOTIONS TO COMPEL/DEEM ADMITTED | .1 |
| 8/16/16 | CMK | RECEIVE AND EVALUATE EMAIL AND VOICEMAIL FROM DEFENSE COUNSEL; REVIEW FILE; DRAFT REPLY | .2 |
| 8/19/16 | CMK | TRAVEL AND ATTEND ORAL ARGUMENT RE MOTIONS TO COMPEL/RFA DEEMED ADMITTED | 2 |
| 8/24/16 | CMK | PREPARE NOTICE OF RULING RE MOTIONS | 0.3 |
| 8/24/16 | CMK | DRAFT COVER LETTER RE OBLIGATIONS OF DEFENSE PER COURT'S ORDERS | 0.3 |

| 9/26/16 | JBD | RECEIVE MESSAGE FROM CLIENT; TELEPHONE CONFERENCE WITH CLIENT RE: STATUS, TRIAL DATES, DEFENDANT'S FAILURE TO RESPOND WITH VERIFIED DISCOVERY AND PAY SANCTIONS | 0.2 |
|---|---|---|---|
| 9/29/16 | CMK | DRAFT LETTER TO DEFENSE RE MOTION FOR TERMINATING SANCTIONS | 0.7 |
| 10/13/16 | JBD | RECEIVE AND EVALUATE CORRESPONDENCE FROM DEFENSE COUNSEL DATED 10/10/16 AND DISCOVERY RESPONSES WITHOUT OBJECTION | 0.2 |
| 10/21/16 | CMK | RESEARCH AND DRAFT MOTION FOR TERMINATING SANCTIONS OR MONETARY SANCTIONS | 3.8 |
| 10/24/16 | CMK | FINALIZE MOTION FOR TERMINATING SANCTIONS FOR FILING | 0.7 |
| 10/27/16 | JBD | RECEIVE AND EVALUATE NOTICE OF CHANGE OF ADDRESS | 0.1 |
| 11/10/16 | CMK | RECEIVE AND EVALUATE DOCUMENTS EMAILED FROM DEFENSE AND PREPARE MEMO RE SAME; RECEIVE AND EVALUATE OPPOSITION TO MOTION FOR TERMINATING SANCTIONS; DRAFT OBJECTION AND DECLARATION RE LATE FILED OPPOSITION; DRAFT CORRESPONDENCE RE MISSING DOCUMENTS FROM PRODUCTION; AMEND AND FINALIZE DEPOSITION NOTICE OF PMK; DRAFT NOTICE OF ERRATA; | 5.8 |
| 11/10/16 | CMK | DRAFT CORRESPONDENCE TO DEFENSE COUNSEL RE PROMISED BUT MISSING DOCUMENTS | 0.3 |
| 11/11/16 | CMK | TELEPHONE CALL TO DEALERSHIP EXPERT JACK COHEN RE FACTS OF CASE AND HIS OPINIONS; DRAFT DESIGNATION OF EXPERT AND DECLARATION | 1.3 |

| 11/15/16 | JBD | RECEIVE AND EVALUATE DEFENDANT'S FIRST EXPERT DESIGNATION | 0.1 |
|---|---|---|---|
| 11/16/16 | CMK | DRAFT NOTICE OF DEPOSITION OF DEALER'S MANAGEMENT AND OWNERSHIP EMPLOYEES | 0.3 |
| 11/17/16 | CMK | RECEIVE AND EVALUATE EMAIL FROM STEVE LUCERO RE INTERROGATORIES, CORRESPONDENCE AND DOCUMENT PRODUCTION | 0.3 |
| 11/18/16 | CMK | TELEPHONE CALL FROM DEFENSE RE TAKING MOTION OFF CALENDAR; TOLD HIM THE COURT HAD CONTINUED TODAY'S HEARING TO THE 30TH AND I WOULD LOOK AS HIS PAPERS BUT I WAS NOT INCLINED TO TAKE THE MATTER OFF CALENDAR. | 0.2 |
| 11/18/16 | JBD | RECEIVE AND EVALUATE MOVING PAPERS REGARDING DEFENDANT'S PETITION TO COMPEL ARBITRATION | 0.4 |
| 11/18/16 | CMK | RECEIVE AND EVALUATE CORRESPONDENCE FROM DEFENSE COUNSEL RE OUTSTANDING DOCUMENTS | 0.1 |
| 11/27/16 | JBD | RECEIVE AND EVALUATE DEFENDANT'S SECOND DESIGNATION OF EXPERT WITNESSES | 0.1 |
| 11/29/16 | CMK | RECEIVE AND EVALUATE EMAIL FROM STEVE LUCERO RE STIPULATE TO CONTINUANCE OF HEARING | 0.1 |
| 12/9/16 | JDD | REVIEW AND EVALUATE PETITION TO COMPEL ARBITRATION; REVIEW AND EVALUATE FILE DOCUMENTS FOR FACTS SUPPORTING OPPOSITION BASED ON WAIVER; REVIEW AND EVALUATE REGISTER OF ACTIONS; DRAFT ROUGH OUTLINE OF DEFENDANT'S ARGUMENT | 1.5 |

| 12/11/16 | JDD | REVIEW DEFENDANT'S AUTHORITIES; CONDUCT EXTENSIVE LEGAL RESEARCH AND EVALUATION OF AUTHORITIES SUPPORTING OPPOSITION BASED ON WAIVER; PREPARE DETAILED OUTLINE OF POINTS, COUNTER-POINTS AND SUPPORTING AUTHORITY | 3.1 |
|---|---|---|---|
| 12/12/16 | JDD | DRAFT OPPOSITION TO PETITION TO COMPEL ARBITRATION | 2.0 |
| 12/13/16 | JDD | EXTENSIVE REWRITE AND EDITING OF DRAFT BRIEF RE: ARBITRATION; FOLLOW-UP LEGAL RESEARCH AND ANALYSIS | 3.3 |
| 12/14/16 | CMK | EDIT, AMEND, AND FINALIZE OPPOSITION RE ARBITRATION; DRAFT SUPPORTING DECLARATION | 1.8 |
| 12/16/16 | CMK | RECEIVE AND EVALUATE MESSAGE THAT DEFENSE CALLED; RETURN CALL AT 11:10 A.M. AND LEAVE MESSAGE | 0.1 |
| 12/16/16 | CMK | TELEPHONE CALL FROM DEFENSE | 0.1 |
| 12/16/16 | CMK | TRAVEL AND ATTEND HEARING ON MOTION FOR TERMINATING SANCTIONS (LAST ON CALENDAR) | 3.5 |
| 12/19/16 | CMK | DRAFT NOTICE OF RULING | 0.3 |
| 12/30/16 | CMK | REVIEW AND EVALUATE TENTATIVE RULING DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION; CALL DEFENSE RE INQUIRY IF HE WILL SUBMIT ON TENTATIVE; CALL COURT RE PARTIES TO SUBMIT; DRAFT NOTICE OF RULING | 0.4 |
| 1/3/17 | CMK | DRAFT EMAIL TO DEFENSE RE REQUEST TO CONFIRM PMK DEPOSITION SET FOR NEXT WEEK | 0.1 |

| 1/4/17 | CMK | CALLED DEFENSE RE STATUS OF DEPOSITION AND LEFT MESSAGE WITH ASSISTANT RE SAME AND REQUEST FOR CONFIRMATION; DRAFT EMAIL RE SAME | 0.2 |
|--------|-----|------|-----|
| 1/6/17 | CMK | TELEPHONE CALL FROM DEFENSE RE CONTINUING DEPOSITIONS OF DEFENSE WITNESSES; DRAFT CONFIRMING LETTER | 0.3 |
| 1/6/17 | CMK | RECEIVE AND EVALUATE EMAIL FROM DEFENSE RE PMK'S IDENTITY | 0.1 |
| 1/16/17 | CMK | CALL FROM DEFENSE REQUESTING STIPULATION TO CONTINUE TRIAL TO MARCH 24TH; PREPARE MEMO TO FILE | 0.2 |
| 1/17/17 | CMK | EXCHANGE SEVERAL EMAILS WITH DEFENSE RE REQUEST FOR CONTINUANCE | 0.2 |
| 1/19/17 | CMK | RECEIVE AND EVALUATE PROPOSED STIPULATION TO CONTINUE TRIAL; CHAIR CONFERENCE WITH ATTORNEYS JON AND JASON DUMBECK RE PROS AND CONS OF STIPULATING TO CONTINUANCE; DRAFT DETAILED REPLY TO DEFENSE RE STIPULATION | 1.1 |
| 1/22/17 | CMK | REVIEW AND EVALUATE FILE CONTENTS; IDENTIFY AND LOCATE EXHIBITS FOR EMPLOYEE DEPOSITIONS; BEGIN PREPARING QUESTIONS FOR DEPOSITION OF DEFENDANT'S PMK ON 26 SUBJECT AREAS AND 7 CATEGORIES OF DOCUMENTS | 9.8 |
| 1/23/17 | CMK | CONTINUE PREPARATION AND TAKE DEPOSITION OF DEFENDANT EMPLOYEE "MATT;" MEET WITH ATTORNEYS JON AND JASON DUMBECK RE ISSUES TO RESOLVE WITH FOLLOWING TWO EMPLOYEE DEPOSITIONS; PREPARE FOR TAKING DEPOSITION OF DEFENDANT EMPLOYEE "SAM" | 8.2 |

| 1/23/17 | JBD | PREPARE FOR DEPOSITION OF D. FAKHRABADI | 2.5 |
|---------|-----|------------------------------------------|-----|
| 1/24/17 | CMK | PREPARE FOR AND TAKE DEPOSITION OF DEFENDANT EMPLOYEE "SAM" | 5.5 |
| 1/24/17 | CMK | ATTEND DEPOSITION OF DEFENDANT EMPLOYEE DARIUSH; MEET WITH ATTORNEYS JON DUMBECK AND JASON DUMBECK RE SCHEDULING ASSIGNMENTS FOR TRC AND TRIAL PREPARATION | 3.2 |
| 1/24/17 | CMK | RECEIVE AND EVALUATE DEFENDANT'S STIPULATION TO CONTINUE TRC | 0.1 |
| 1/24/17 | JBD | COMPLETE PREPARATION AND TAKE DEPOSITION OF DEFENDANT PLPO OWNER DARIUSH FAKHRABADI; POST DEPOSITION STRATEGY MEETING; ONLINE INVESTIGATION TO RESEARCH WITNESSES LAURA HALIW AND REZA FADAVI | 4.3 |
| 1/25/17 | CMK | RESEARCH AND DRAFT SPECIAL INSTRUCTIONS WITH AUTHORITY; REVIEW LOCAL RULES AND BEGIN PREPARATION OF TRC REPORT; DRAFT AND EXCHANGE SEVERAL EMAILS AND CALLS WITH DEFENSE RE TRC REPORT AND HEARING; DRAFT WITNESS LIST; CALL LORA HALIW; RECEIVE CALL FROM MRS. HALIW AND INTERVIEW SAME; | 7.2 |
| 1/26/17 | CMK | RESEARCH, DRAFT AND PREPARE SUBPOENA AND DECLARATION FOR DEFENDANT'S PRINCIPAL; RESEARCH, DRAFT AND PREPARE NOTICE TO APPEAR AND PRODUCE; REVIEW AND EVALUATE 2017 CACI INSTRUCTIONS AND IDENTIFY REQUESTED INSTRUCTIONS FOR TRC REPORT; CONTINUE WORK ON SPECIAL INSTRUCTIONS AND AUTHORITY; DRAFT EMAIL TO DEFENSE RE TRC; TELEPHONIC INTERVIEW OF DANIEL HALIW; AMEND WITNESS LIST | 6.8 |
| 1/26/17 | CMK | TELEPHONE CALL FROM DEFENSE RE TRC ATTACHMENTS | 0.1 |

| 1/27/17 | CMK | EXCHANGE SEVERAL TELEPHONE CALLS AND EMAILS WITH DEFENSE; ASSESS DEFENDANT'S EXHIBIT LIST; RECONCILE TRIAL EXHIBITS, EDIT, AMEND AND FINALIZE TRC REPORT AND SUPPORTING ATTACHMENTS | 3.1 |
|---|---|---|---|
| 1/27/17 | CMK | TRAVEL AND ATTEND TRC | 1.6 |
| 1/30/17 | CMK | PREPARE NOTES RE TRIAL RULES AND POLICIES FOR DEPARTMENT 29 | 0.3 |
| 1/30/17 | CMK | DRAFT EMAIL TO DEFENSE RE LISTING OBJECTIONS TO EXHIBITS AS ORDERED BY COURT | 0.1 |
| 2/9/17 | CMK | DRAFT LENGTHY EMAIL EXPLAINING HOW WE CAN WORK TOGETHER TO PREPARE JOINT TRIAL EXHIBITS FOR THE COURT AND REQUESTING FILLED IN EXHIBIT LIST FROM DEFENSE | 0.4 |
| 2/9/17 | JBD | RECEIVE AND EVALUATE NOTICE OF RESCHEDULED HEARING | 0.1 |
| 2/17/17 | CMK | REVIEW AND EVALUATE VIDEO FOOTAGE OF CLIENTS AND EDIT SAME FOR FOCUS GROUP PRESENTATIONS; PREPARE AND EVALUATE FOCUS GROUP QUESTIONNAIRE | 3.3 |
| 2/20/17 | CMK | DRAFT EMAIL TO DEFENSE RE 4TH REQUEST AFTER TRC FOR DEFENDANT'S INFORMATION NEEDED TO COMPLETE JOINT EXHIBIT LIST AS ORDERED BY THE COURT | 0.1 |
| 2/20/17 | CMK | PREPARE MEMORANDUM RE JOINT TRIAL EXHIBITS; PREPARE TRIAL SUBPOENAS, ON-CALL AGREEMENTS, AND COVER LETTERS FOR 3RD PARTY TRIAL WITNESSES | 2.8 |

| 2/21/17 | CMK | RECEIVE AND EVALUATE MAIL FROM DEFENSE RE TRIAL EXHIBITS | 0.2 |
|---|---|---|---|
| 2/23/17 | JBD | TELEPHONE CONFERENCE WITH CLIENT; PREP NOTES RE: SAME | 0.5 |
| 3/1/17 | CMK | FINALIZE SUBPOENA AND COVER LETTER TO FORD OF ESCONDIDO, EXPRESS TIRE, JESUS CARVAJEL, AND JOSHUA HAY | 0.3 |
| 3/2/17 | JDD | BEGIN DRAFTING TRIAL BRIEF | 4.0 |
| 3/2/17 | JBD | EDIT OPENING STATEMENT; REVIEW DEPO OF SAM AND DARIUSH IN PREP FOR TRIAL TESTIMONY; EDIT PROPOSED JURY INSTRUCTIONS AND SPECIAL VERDICT; DISCUSS PROS/CONS OF BENCH TRIAL | 4.3 |
| 3/3/17 | JBD | TELEPHONE CONFERENCE WITH CLIENTS RE: TRIAL SCHEDULING AND PREPARATION | 0.3 |
| 3/3/17 | CMK | PREPARE FOR, TRAVEL AND ATTEND TRIAL CALL | 2.1 |
| 3/5/17 | JBD | ORGANIZE DOCUMENTS TO REVIEW WITH CLIENTS TO PREPARE FOR TESTIMONY; WITNESS MEETING TO PREPARE FOR TRIAL TESTIMONY, PREPARE CLIENT, IVAN GUZMAN AND JASON GUZMAN FOR CROSS-EXAMINATION; REVIEW DOCUMENTS WITH WITNESSES AND PREPARE FOR DIRECT; REVIEW TIMELINE | 5.6 |
| 3/5/17 | CMK | CONTINUE PREPARATION OF 776 EXAMINATIONS AND OPENING STATEMENT | 11 |
| 3/5/17 | JDD | CONTINUE WORK ON TRIAL BRIEF | 2.5 |

| 3/6/17 | CMK | PREPARE FOR AND PRESENT TO FOCUS GROUP; AMEND OPENING STATEMENT; CONTINUED WORK ON 776 EXAMINATIONS; INTERVIEW WITNESSES HALIW AND MURI | 6.6 |
|--------|-----|---|-----|
| 3/6/17 | JDD | COMPLETE DRAFT OF TRIAL BRIEF; REVIEW AND REVISE TRIAL BRIEF | 2.0 |
| 3/6/17 | JBD | COMPLETE ISSUE SUMMARIES OF WITNESSES AGMAGAHNI AND FAKRABADI; TELEPHONE CONFERENCE WITH CLIENT; START PREPARATION OF 776 WITNESS EXAMINATIONS; REVIEW AND EDIT TRIAL BRIEF. | 7.2 |
| 3/7/17 | CMK | PREPARE FOR TRIAL CALL; TRAVEL TO VISTA COURTHOUSE AND ATTEND TRIAL CALL; MEET WITH DEFENSE TO COORDINATE EXHIBITS; TRAVEL TO OFFICE; CALL FROM DEFENSE COUNSEL RE TRIAL SCHEDULE; CONFERENCE WITH ATTORNEY JON DUMBECK RE TRIAL PREPARATION AND WITNESSES | 5.5 |
| 3/7/17 | JBD | CONTINUE PREPARATION OF VOIR DIRE EXAMINATION; CONTINUE WORK ON WITNESS EXAMINATION OUTLINES; TELEPHONE CONFERENCE WITH CLIENT REGARDING UPDATED TRAIL SCHEDULE | 2.3 |
| 3/7/17 | CMK | FINALIZE AND EXECUTE TRIAL BRIEF | 0.3 |
| 3/13/17 | JBD | RECEIVE AND EVALUATE NOTICE OF REASSIGNMENT; CONDUCT RESEARCH ON JUDICIAL OFFICER | 0.5 |
| 3/13/17 | CMK | RECEIVE EMAIL AND TELEPHONE CALL FROM DEFENSE RE TRIAL CONTINUANCE AND EX PARTE PLANNED FOR THIS WEEK | 0.2 |

| 3/14/17 | CMK | DRAFT MESSAGE TO WITNESS RE TRIAL CONTINUANCE; TELEPHONE CALL FROM DEFENSE RE EX-PARTE THIS WEEK AND TRIAL AVAILABILITY | 0.1 |
|---|---|---|---|
| 3/15/17 | CMK | REVIEW AND EVALUATE EX PARTE PAPERS FROM DEFENSE | 0.4 |
| 3/16/17 | CMK | TRAVEL TO AND FROM VISTA AND ATTEND DEFENDANT'S EX PARTE TO CONTINUE TRIAL | 1.2 |
| 3/21/17 | JBD | CONTINUE TRIAL PREP; TELEPHONE CONF WITH CLIENT | 0.5 |
| 4/11/17 | CMK | DRAFT CORRESPONDENCE TO DEFENSE RE ACCEPTING SUBPOENA FOR DEFENDANT'S ACCOUNTANT | 0.1 |
| 4/14/17 | CMK | REVIEW AND FINALIZE SUBPOENA AND ON-CALL AGREEMENT FOR DEFENDANT'S ACCOUNTANT | 0.1 |
| 4/14/17 | CMK | RECEIVE AND EVALUATE EMAIL FROM STEVE LUCERO RE DEFENDANT IS REFUSING TO AUTHORIZE LUCERO TO ACCEPT SERVICE OF SUBPOENA ON DEFENDANT'S ACCOUNTANT | 0.1 |
| 4/14/17 | CMK | DRAFT COVER LETTER TO DEFENDANT'S ACCOUNTANT RE SUBPOENA AND ON CALL AGREEMENT | 0.2 |
| 4/20/17 | JDD | REVIEW, REVISE, FINALIZE CACI INSTRUCTIONS; ADD INSTRUCTIONS RE: NON-ECONOMIC DAMAGES FOR CONVERSION | 2.3 |
| 4/21/17 | CMK | TRAVEL TO/FROM VISTA COURT FOR TRIAL CALL | 1.5 |

| 4/21/17 | CMK | CONFERENCE WITH COURT CLERK; DRAFT PREEMPTORY CHALLENGE | 0.5 |
|---------|-----|----------------------------------------------------------|-----|
| 4/21/17 | CMK | TRAVEL TO/FROM VISTA COURT FOR TRIAL ASSIGNMENT AND FILING PREEMPTORY CHALLENGE | 1.6 |
| 4/21/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE FOR TRIAL CALL; MOTIONS IN LIMINE; PRELIMINARY REVIEW OF JURY INSTRUCTIONS AND VERDICT FORM | 3.3 |
| 4/23/17 | JBD | PREPARE DIRECT EXAMINATION OUTLINE; DEFENSE CONTENTIONS AND UNDERMINES FOR WITNESS PREP; MEET AND PREPARE PLAINTIFF FOR DIRECT AND CROSS EXAMINATION; PREPARE IVAN AND JASON GUZMAN FOR DIRECT AND CROSS EXAMINATION | 7.2 |
| 4/23/17 | CMK | CONTINUE WORK ON 776 OF PRIMARY LIABILITY WITNESS FOR DEFENDANT | 8.5 |
| 4/24/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE FOR PRE-TRIAL JURY INSTRUCTION CONFERENCE WITH JUDGE POLLACK | 4.0 |
| 4/24/17 | JBD | REVIEW EXTENSIVE OBJECTIONS TO PROPOSED JURY INSTRUCTION FROM DEFENSE; OUTLINE PLAINTIFFS POSITION AND OBJECTIONS PREPARE MEMO FOR PRE-TRIAL INSTRUCTION CONFERENCE; CONTINUE PREPARATION OF VOIR DIRE EXAMINATION; TELEPHONE CONFERENCE WITH CLIENTS | 8.5 |
| 4/25/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE; ATTEND VOIR DIRE AND JURY SELECTION; PREPARE FOR NEXT TRIAL DAY | 12.0 |
| 4/25/17 | JBD | TRAVEL TO SAN DIEGO TRIAL DAY 1; CONDUCT VOIR DIRE EXAMINATION; JURY SELECTION; RETURN TO OFFICE CONTINUE PREPARE FOR DAY 2 | 12.0 |

| 4/26/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE; OPENING STATEMENT; 776 OF EMPLOYEES ROKHFIROOZ, AGHMAGADI AND FAKHRABADI; DIRECT EXAMINATIONS OF 3RD PARTY WITNESSES HALIW AND MURI; PREPARE FOR NEXT TRIAL DAY | 12.0 |
|---|---|---|---|
| 4/26/17 | JBD | PREPARE FOR TRIAL DAY 2; TRAVEL TO SAN DIEGO; TRIAL DAY 2; PREPARE FOR TRIAL DAY 3 | 12.0 |
| 4/27/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE; DIRECT EXAMINATIONS OF PLAINTIFF, HUSBAND AND SON; PREPARE FOR NEXT TRIAL DAY | 12.0 |
| 4/27/17 | JBD | PREPARE FOR TRIAL DAY 3; TRAVEL TO COURT; TRIAL DAY 3; RETURN TO OFFICE | 10.0 |
| 4/28/17 | CMK | LEGAL RESEARCH AND PREPARE FOR JURY INSTRUCTION CONFERENCE; TRAVEL TO/FROM DOWNTOWN COURTHOUSE; JURY INSTRUCTION CONFERENCE | 8.5 |
| 4/28/17 | JBD | TRAVEL TO SAN DIEGO FOR FINAL INSTRUCTION CONFERENCE; RETURN TO OFFICE | 4.5 |
| 4/30/17 | JBD | PREPARE FOR REBUTTAL CLOSING; ANTICIPATE AND RESPOND TO DEFENSE POINTS; ASSIST WITH CLOSING ARGUMENT | 7.4 |
| 4/30/17 | CMK | PREPARE FOR CLOSING ARGUMENT; FINALIZE JURY INSTRUCTIONS AND PREPARE SPECIAL VERDICT; RESEARCH RE WAIVER OF ILLEGAL CONTRACT; GATHER AUTHORITY AND DRAFT BENCH BRIEF | 12.2 |
| 5/1/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE FOR ARGUMENT RE SPECIAL VERDICT; CLOSING ARGUMENT, INSTRUCTIONS AND DELIBERATIONS | 10.0 |

| 5/1/17 | JBD | TRAVEL TO SAN DIEGO; CLOSING ARGUMENT; JURY INSTRUCTIONS AND DELIBERATION JURY QUESTION; START PREPARATION FOR PHASE 2; REVIEW FAKRABADI FINANCIAL TESTIMONY AND START OUTLINE FOR PHASE 2; TELEPHONE CONFERENCE WITH CLIENT | 10.0 |
|--------|-----|------|------|
| 5/2/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE; JURY DELIBERATIONS AND QUESTIONS TO THE COURT; ORAL ARGUMENT RE INSTRUCTIONS FOR SECOND PHASE; PREPARE FOR NEXT TRIAL DAY | 12.0 |
| 5/2/17 | JBD | CONTINUE PREP FOR PHASE 2, TRAVEL TO COURT, JURY QUESTIONS, TELEPHONE CONFERENCE WITH CLIENT RE: POSSIBLE SETTLEMENT, OBTAIN AND REVIEW DOCUMENTS FROM DEFENSE; TAKE VERDICT; OBTAIN MORE DOCUMENTS; REVIEW DOCUMENTS AND PREPARE 776 EXAMINATION OF FAKRABADI FOR PHASE 2; PREPARE EXHIBITS; EDIT CLOSING | 14.3 |
| 5/3/17 | CMK | TRAVEL TO/FROM DOWNTOWN COURTHOUSE; 776 OF DEFENDANT'S CEO; 776 OF DEFENDANT'S ACCOUNTANT; CLOSING ARGUMENT; RECEIVE VERDICT; MEET WITH JURORS; EVALUATE AND IDENTIFY TRIAL DOCUMENTS FOR POST TRIAL MOTIONS AND POSSIBLE APPEAL | 8.0 |
| 5/3/17 | JBD | CONTINUE PREP FOR PHASE 2 EXAMINATION AND CLOSING ARGUMENT; PHASE 2 TRIAL AND TAKE THE VERDICT; RETURN TO OFFICE; TELEPHONE CONFERENCE WITH CLIENT | 8.4 |
| 5/8/17 | CMK | PREPARE AND EVALUATE PROPOSED JUDGMENT BASED ON SPECIAL VERDICTS | 1.5 |
| 5/15/17 | CMK | RECEIVE AND EVALUATE JUDGMENT; PREPARE, FILE AND SERVE NOTICE OF ENTRY OF JUDGMENT | 0.5 |
| 5/22/17 | CMK | REVIEW AND EVALUATE BILLING FILE; PREPARE COST WORKSHEET AND SUMMARY; REVIEW TIME RECORDS | 2.5 |

| 6/15/17 | CMK | RESEARCH AND DRAFT DEMAND ON DEALER'S BOND | 2.3 |
|---------|-----|--------------------------------------------|-----|
| 7/10/17 | JDD | BEGIN DRAFTING MOTION FOR ATTORNEY FEES | 3.8 |
| 7/11/17 | JDD | COMPLETE DRAFT OF MOTION FOR ATTORNEY FEES | 5.0 |
| 7/13/17 | JBD | AUDIT TIME RECORDS AND PREPARE EXHIBITS | 2.7 |
| 7/14/17 | JBD | REVISE, EDIT AND FINALIZE MOTION FOR ATTORNEY'S FEES AND SUPPORTING DOCUMENTS | 3.5 |
| | | TOTAL | 411.2 |

# EXHIBIT 2

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 09/29/2017          TIME: 10:00:00 AM          DEPT:  C-71

JUDICIAL OFFICER PRESIDING: Gregory W Pollack
CLERK:  Terry Ray
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:  K. Harris

CASE NO: **37-2016-00003913-CU-NP-NC**     CASE INIT.DATE: 02/04/2016
CASE TITLE: **GUZMAN vs POINT LOMA PRE-OWNED INC[IMAGED]**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Non-PI/PD/WD tort - Other

---

**EVENT TYPE**: Motion Hearing (Civil)
MOVING PARTY: GUADALUPE GUZMAN
CAUSAL DOCUMENT/DATE FILED: Motion for Attorney Fees 9/29/17, 07/17/2017

**APPEARANCES**
Jason D. Dumbeck, specially appearing for counsel Curtis M King, present for Respondent on Appeal,Plaintiff(s).

---

I.

**INTRODUCTION**

This is plaintiff Guadalupe Guzman's post-trial motion for prevailing party contractual and statutory attorney's fees in an action she had filed against defendant Point Loma Pre-Owned, Inc.

II.

**ANALYSIS**

Following a jury trial, judgment was entered in favor of Guzman and against Point Loma Pre-Owned in the amount of $11,300 in compensatory damages and $250,000 in punitive damages. Accordingly, Guzman is entitled to an award of attorney's fees pursuant to both ¶7 of the applicable contract (by operation of Civil Code §1717) and Civil Code §2983.4 (Automobile Sales Finance Act), the only real issue being the amount.

The court has reviewed the papers submitted by plaintiff (defendant did not file written opposition), including plaintiff's counsel's billing records, which document the hours spent and the hourly billing rates. In addition, the court applies its own experience of 25 years as a civil trial lawyer prior to appointment to the bench, followed by almost 9 years as a trial judge.  "The experienced trial judge is the best judge of the value of professional services rendered in this court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.  In reviewing an attorneys' fee award, the appellate court

---

CASE TITLE: GUZMAN vs POINT LOMA PRE-OWNED     CASE NO: **37-2016-00003913-CU-NP-NC** INC[IMAGED]

"indulg[es] all inferences in favor of the trial court's order ... and presume[s] the trial court's attorney fees award is correct ..."  *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 704.

This court agrees with plaintiff's counsel that the time spent of 411.2 hours is reasonable.  As for attorney's fee rate, this court finds $400/hr., not $450/hr., to be the reasonable rate.  Guzman's attorneys did an excellent job in representing her, and, in fact, perhaps the legal work they did was "too good" in light of the greater than 22 to 1 ratio of punitive damages ($250,000) to compensatory damages ($11,300).  *See Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159 (ratio of more than 10 to 1 between punitive and compensatory damages is likely excessive).  The court notes the case is presently on appeal.

Multiplication of the reasonable hourly rate of $400 by the reasonable number of hours (411.2) results in a lodestar of $164,480.
Plaintiff's request that the court apply a multiplier to the lodestar is denied.  While the court was, indeed, impressed with the quality of lawyering provided by plaintiff's counsel, the court believes that the lodestar figure calculated by the court already takes into account the high quality of lawyering rendered and also factors in the contingent risk associated with the fee arrangement between plaintiff and plaintiff's law firm.

In *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138-1139, the California Supreme Court observed that a court should not apply a multiplier to the lodestar figure if the lodestar figure, itself, already reflects consideration of the exceptional representation, lest the attorney end up getting doubly compensated:

*"We emphasize that when determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar.  The factor of extraordinary skill, in particular, appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar.  A more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate.  [Citation.]  Indeed, the reasonable hourly rate used to calculate the lodestar is the product of a multiplicity of factors ... the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.  Thus, a trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation.  Otherwise, the fee award will result in unfair double counting and be unreasonable."*

Accordingly, the court declines to apply a multiplier to the lodestar figure.

**III.**

**CONCLUSION**

The court awards plaintiff **$164,480** in prevailing party contractual and statutory attorney's fees.

_____
Judge Gregory W Pollack

# CERTIFICATE OF SERVICE

I certify that on April 11, 2022, the foregoing document entitled **DEFENDANT CAPITAL ONE, N.A.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** was filed electronically in the Court's EFC; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in the case. I further certify that a copy of the foregoing document(s) was [mailed via U.S. Mail or another carrier] to the person(s) listed below:

Jon B. Dumbeck, Esq.                    Attorneys for Plaintiff
Curtis M. King, Esq.                    Patricia Fierro
DUMBECK & DUMBECK
3355 Mission Ave., Suite 139
Oceanside, CA 92058
Telephone: (760) 5296-4958
Facsimile: (760) 637-2391



/s/ *Alicia A. Baiardo*
Alicia A. Baiardo