1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

PATRICIA FIERRO,

                              Plaintiff,

        v.

CAPITAL ONE, N.A.,

                              Defendant.

Case No. 22-cv-00493-BAS-BLM

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND (ECF No. 12)**

Presently before the Court is Plaintiff Patricia Fierro's Motion to Remand this action to state court.  (Mot. to Remand, ECF No. 12.)  Defendant Capital One, N.A. invoked federal diversity jurisdiction to remove the case to federal court.  (Notice of Removal, ECF No. 1.)  Plaintiff argues that this case fails to meet the amount in controversy to satisfy diversity jurisdiction under 28 U.S.C. § 1332.  (Mot. 3:10–12.)  Defendant opposes the motion (Opp'n, ECF No. 16) and Plaintiff replies (Reply, ECF No. 18).

The Court finds this Motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L. R. 7.1(d)(1).  For the following reasons, the Court finds removal was appropriate and **DENIES** Plaintiff's Motion to Remand.

22cv0493

## I.      BACKGROUND

In August 2014, Plaintiff purchased a used car from El Cajon Ford, a non-party car dealership.  (Compl. ¶ 13, Ex. A to Notice of Removal, ECF No. 1-2.)  To complete the purchase, Plaintiff signed a retail installment sales contract (the "Sales Contract") requiring her to pay the dealership monthly installments of $301.85 for five years.  (*Id.*; Sales Contract, Ex. 2 to Compl.)  The dealership retained a security interest in the vehicle. (Sales Contract at 1.)

For an additional $795.00, Plaintiff executed a Guaranteed Asset Protection Addendum (the "GAP Addendum").  (Compl. ¶ 14; GAP Addendum, Ex. 1 to Compl.)  In the event Plaintiff's car was stolen or totaled before she made all her payments under the Sales Contract, the GAP Addendum would cover the difference between her car insurance payout and the remaining balance on the Sales Contract.  (Compl. ¶ 8.)  Without the GAP Addendum, Plaintiff would remain obligated to make payments under the Sales Contract even after her car is gone.  (*Id.*)

After Plaintiff bought the car, Defendant acquired the Sales Contract and GAP Addendum and assumed the dealership's rights and liabilities.  (*Id.* ¶ 18.)  A few years later, Plaintiff was involved in a collision and her car was totaled.  (*Id.* ¶ 20.)  At the time of the accident, Plaintiff still owed Defendant $6,232.33 on the Sales Contract.  (*Id.* ¶ 21.)  Plaintiff's insurance company paid Defendant proceeds of $3,758.34, leaving a remaining balance of $2,473.99.  (*Id.*)  Plaintiff performed the conditions required to obtain her benefits under the GAP Addendum, expecting that Defendant would then waive the outstanding balance on the Sales Contract pursuant to the GAP Addendum.  (*Id.* ¶ 22.)  Defendant, however, did not waive the entire gap.  (*Id.*)  Instead, without providing a satisfactory explanation, Defendant waived only $48.82 and pursued Plaintiff for the remaining deficiency.  (*Id.* ¶¶ 22–23.)

Defendant indicated to Plaintiff that her three late payments and fourteen late charges resulted in its low waiver calculation.  (*Id.* ¶ 23.)  According to Defendant's own records, however, at the time of the accident Plaintiff had only one late payment and two

late charges due.  (*Id.*)  In the weeks after the accident, she made additional payments to bring her account current as of the date of the accident.  (*Id.*)  Nonetheless, Defendant attempted to collect over $2,000 from Plaintiff and incorrectly reported to credit bureaus that she had defaulted on the Sales Contract.  (*Id.* ¶ 22.)

Plaintiff claims that Defendant breached the implied covenant of good faith and fair dealing by interpreting her Sales Contract and GAP Addendum in an unfair, unreasonable, and dishonest manner.  (*Id.* ¶ 33.)  Plaintiff also alleges that the GAP Addendum she executed is deceptive and designed to mislead consumers.  (*Id.* ¶ 16.)  She thus claims that Defendant violated provisions of California's Commercial Code and Consumer Credit Reporting Agencies Act and brings independent claims for declaratory and injunctive relief.  (*Id.* ¶¶ 35–56.)

In her Complaint, Plaintiff does not include a specific dollar amount for damages, but she is seeking declaratory relief; actual, economic, and non-economic damages; restitution; statutory penalties; injunctive relief; attorneys' fees and costs; and prejudgment interest.  (*Id.* at 18.)  Her request for injunctive relief includes prohibiting Defendant from accepting assignment of sales contracts that include the same form of addendum as Plaintiff signed here.  (*Id.* ¶ 57(e).)  In addition, at the time of removal, Plaintiff had made a statutory offer to compromise to Defendant for $46,500.  (Mot. 3:7–9; Section 998 Offer, Ex. A to Mot., ECF No. 12-2.)

On April 11, 2022, Defendant filed its Notice of Removal pursuant to 28 U.S.C. § 1332.  (Notice of Removal 1.)  Defendant alleges Plaintiff is domiciled in California and Defendant, a national banking association, is "a citizen of Virginia as its main office is located there."  (*Id.* ¶¶ 7–8.)  As for the amount in controversy, Defendant contends it would cost more than $75,000 to comply with Plaintiff's requested injunctive relief.  (*Id.* ¶ 13.)  Defendant also alleges that Plaintiff would be entitled to attorneys' fees if she prevailed, and Defendant asserts her fees "would undoubtedly exceed $75,000" if this case went to trial.  (*Id.* ¶ 17.)  On August 15, 2022, Plaintiff filed a motion to remand the action to state court.  (Mot. 1.)

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (citations omitted). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States." 28 U.S.C. § 1441(a).

In order to invoke a district court's diversity jurisdiction, a party must demonstrate there is complete diversity of citizenship between the parties and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332; *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). "The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008); *see also Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010) ("[I]n a case that has been removed from state court to federal court . . . on the basis of diversity jurisdiction, the proponent of federal jurisdiction—typically the defendant in the substantive dispute—has the burden to prove, by a preponderance of the evidence, that removal is proper.").

## III. ANALYSIS

The requirement at issue here is the amount in controversy, as Defendant has adequately alleged complete diversity. (Notice of Removal ¶¶ 7–8.) *See also* 28 U.S.C. §§ 1332(a), 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding "that a national bank, for § 1348 purposes, is a citizen of the State in which its main office" is located).

To assert the amount in controversy in the removal notice, a "short and plain" statement need not contain evidentiary submissions and must include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84, 89 (2014). "Thereafter, the plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack

1    on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699

2    (9th Cir. 2020) (quoting *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)).

3            "A 'facial' attack accepts the truth of the [jurisdictional] allegations but asserts that

4    they 'are insufficient on their face to invoke federal jurisdiction.'" *See Salter*, 974 F.3d at

5    964 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).  By contrast, a

6    factual attack "'contests the truth of the . . . allegations' themselves." *Harris*, 980 F.3d at

7    699 (alteration in original) (quoting *Salter*, 974 F.3d at 964).  A plaintiff may contest the

8    truth of the allegations "by introducing evidence outside the pleadings," *see Salter*, 974

9    F.3d at 964, or by "making a reasoned argument as to why any assumptions on which [the

10   allegations] are based are not supported by evidence," *Harris*, 980 F.3d at 700.  "In the

11   event that the plaintiff does contest the defendant's allegations, both sides submit proof

12   and the court decides, by a preponderance of the evidence, whether the amount-in-

13   controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 82.

14           The amount in controversy is "not a prospective assessment of [a] defendant's

15   liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  Rather, it

16   is the "amount at stake in the underlying litigation." *Theis Rsch., Inc. v. Brown & Bain*,

17   400 F.3d 659, 662 (9th Cir. 2005).  In assessing the amount in controversy, a court must

18   "assume that the allegations of the complaint are true and assume that a jury will return a

19   verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp.,*

20   *Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan*

21   *Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  "In that sense, the

22   amount in controversy reflects the maximum recovery the plaintiff could reasonably

23   recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (citing

24   *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)).

25           In challenging removal, Plaintiff first argues that her $46,500 settlement offer is a

26   reasonable estimate of the amount in controversy. (Mot. 6:18–8:2.)  Second, she contends

27   the Court should not include any post-removal attorneys' fees in the amount in controversy.

28

22cv0493

(*See id.* 7:19–8:2.)  Finally, Plaintiff argues Defendant does not show it would cost more than $75,000 to comply with the requested injunctive relief.  (*Id.* 8:4–9:2.)

## A.      Section 998 Offer to Compromise

Under California Code of Civil Procedure section 998, "not less than 10 days prior to commencement of trial . . . any party may serve an offer . . . to allow judgment to be taken . . . in accordance with the terms and conditions stated at that time."  Cal. Civ. Proc. Code § 998.  A settlement offer, like one made under section 998, "is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."  *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).  An offer may not be determinative, however.  *See id.* (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994)); *see also Nuguid v. Mercedes-Benz USA, LLC*, No. 21-cv-00435-BEN, 2021 WL 5356240, at *13 (S.D. Cal. Nov. 17, 2021) (citing *Cohn*, 281 F.3d at 840) (reasoning an offer to compromise is only "one factor" for determining the amount in controversy).

Plaintiff's offer to compromise totals $46,500.  (Section 998 Offer ¶¶ 3–4.)  Of this amount, $25,000 is for damages and penalties.  (Mot. 7:2–3; Section 998 Offer ¶ 3.)  More specifically, Plaintiff seeks $19,500 in noneconomic damages, $500 in penalties under one statute, and $5,000 in penalties under another statute.  (Mot. 7:10–18.)  Finally, the remainder of her offer—$21,500—is for pre-removal attorneys' fees and costs.  (Section 998 Offer ¶ 4.)

The Court finds Plaintiff's offer to compromise is relevant for determining the amount in controversy, but it is inconclusive.  Namely, the offer does not address the two items used in Defendant's Notice of Removal—the cost to comply with the injunctive relief and the total amount of attorneys' fees at issue.  Again, the amount in controversy is the amount at stake in the litigation and reflects the maximum amount Plaintiff could reasonably recover.  *See Arias*, 936 F.3d at 927; *Theis Research*, 400 F.3d at 662.  Hence, although Plaintiff was willing to abandon her request for injunctive relief to obtain a quick monetary settlement, that does not mean the Court should ignore injunctive relief when

- 6 -

assessing the amount in controversy. Likewise, Defendant has the right to litigate this case through trial, even if that choice would expose Defendant to a larger fee-shifting award if Plaintiff were to prevail. The Court is therefore unpersuaded that the offer to compromise contests Defendant's plausible allegation that the amount in controversy exceeds $75,000.

### B.   Attorneys' Fees

Defendant alleges that Plaintiff's attorneys' fees through trial would exceed the amount in controversy. (Notice of Removal ¶ 17.) Indeed, as mentioned, Plaintiff's offer to compromise demonstrates she had incurred approximately $21,500 in fees at the time of removal. With $25,000 in damages and $21,500 in pre-removal fees, Plaintiff would need to incur only about $28,500 in additional fees for the amount in controversy to exceed $75,000.

The Court, however, need not resolve this issue because Plaintiff does not factually contest Defendant's allegation regarding the attorneys' fees at stake. Instead, Plaintiff's Motion incorrectly asserts that including post-removal attorneys' fees in the amount of controversy is an unsettled issue in the Ninth Circuit. (Mot. 7:19–23.) Yet, as pointed out by Defendant (Opp'n 12:16–21), and later acknowledged by Plaintiff (Reply 4:3–12), the Ninth Circuit has held that future attorneys' fees must be included in the amount in controversy where authorized by a fee-shifting statute like here. *See Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 795 (9th Cir. 2018). For the same reasons, the Court is unpersuaded by Plaintiff's reliance on a comparable case that predated the Ninth Circuit's decision. (*See* Mot. 6:23–26 (citing *Foltz v. Integon Nat'l Ins. Co.*, No. 14-cv-00907-KJM, 2014 WL 4960765 (E.D. Cal. Oct. 2, 2014)).)

Consequently, Plaintiff's challenge to Defendant's inclusion of post-removal attorneys' fees in the amount of controversy is unpersuasive, and this challenge does not reach the preponderance of evidence phase. *See Harris*, 980 F.3d at 699 (explaining that a factual attack involves contesting the truth of the defendant's allegations or advancing "a reasoned argument as to why any assumptions on which they are based are not supported by evidence").

22cv0493

## C.   Injunctive Relief

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).  In the Ninth Circuit, this rule on money damages is extended to injunctive relief based on the "either viewpoint" rule. *Ridder Bros. Inc., v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944).  Under this rule, either the plaintiff's potential recovery or the potential cost to the defendant of complying with the injunction must exceed the jurisdictional threshold.  *See Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017); *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).

Based on the knowledge and experience of its Senior Business Director, Defendant estimates in its Notice of Removal that the cost of complying with Plaintiff's requested injunctive relief will exceed the $75,000 threshold.  (Notice of Removal ¶ 13; Narayanan Decl. ¶ 3, ECF No. 1-3.)  In her Motion to Remand, Plaintiff asserts that Defendant's cost to stop financing deceptive GAP Addendums and to waive deductibles up to $1,000 on existing GAP Addendums will not "move the needle over the $75,000 threshold." (Mot. 8–9.)  Likewise, her Reply argues that Defendant's estimate is "too conclusory and short on facts to prove anything." (Reply 3:15–16.)  Plaintiff's Motion, however, never makes a factual attack on Defendant's assertion.  She has only "challenged the form, not the substance, of [Defendant's] showing" and accordingly has "mounted only a facial attack, rather than a factual attack," on the Notice of Removal.  *See Salter*, 974 F.3d at 964.  Only after a factual attack does the burden fall upon Defendant to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. [1]  *See Harris*, 980 F.3d at 700.

---

[1]  Although unneeded here, Defendant also responded with a supplemental declaration from its Senior Business Director that outlines the tasks Defendant would need to complete to comply with the requested injunctive relief.  (Narayanan Decl. ¶ 5, ECF No. 16-1.)  Based on these tasks, the declarant "estimate[s] that this project will cost at least $300,000.00." (*Id.*)

22cv0493

The Court rejects Plaintiff's facial challenge.  Defendant plausibly alleges the cost to comply with the requested injunctive relief would exceed $75,000.  The Court thus is unpersuaded that the amount in controversy is less than $75,000 from Defendant's viewpoint.

## IV.   CONCLUSION

In sum, Plaintiff moves to remand based on an offer to compromise pending at the time of removal, but this offer is inconclusive.  It does not challenge Defendant's assertion that either the amount of attorneys' fees at stake or the cost to comply with the requested injunctive relief exceeds $75,000.  Moreover, Plaintiff's other arguments are unpersuasive. The Court thus finds Defendant properly removed this case and **DENIES** Plaintiff's Motion to Remand (ECF No. 12).

**IT IS SO ORDERED.**

**DATED: December 6, 2022**

Hon. Cynthia Bashant
United States District Judge

22cv0493